639 So.2d 1082 (1994)
Jan A. BECKER, Appellant,
v.
Kathryn M. BECKER, Appellee.
No. 93-2369.
District Court of Appeal of Florida, Fifth District.
July 15, 1994.
*1083 Charles W. Willits, Orlando, for appellant.
Gary Shader of Shader & Stern, Maitland, for appellee.
GOSHORN, Judge.
This is an appeal from a final judgment of dissolution of marriage. For the reasons set forth below, we affirm in part and reverse in part.
When the husband and wife met, the wife was married to a dentist who had an office across the street from the husband's internal medicine practice. The wife became the husband's patient and ultimately married him, making him her fifth husband. She was 44 years old at the time of the dissolution hearing. The parties were married only four years and had no children. The wife worked in secretarial and office management positions before, during and after the marriage. She earned her master's degree in accounting while married, worked in a CPA firm, and then returned to managing the husband's office. The husband testified that the wife's office bookkeeping practices caused him financial loss. Files were in disarray and missing. The wife failed to file the 1990 corporate tax return and the husband had to pay $20,000 in interest and penalties. He had to pay another $12,000 in penalties and interest on the couple's joint return due to problems the IRS found.
The husband had practiced medicine in Orlando almost ten years before he married the wife. Before the marriage, the husband purchased an office building at 727 Visor Street. He operates his practice out of that building. Prior to and during the marriage, the husband collected rent from his own professional association (P.A.) and from another tenant in his building. The 1,500 square foot condominium the parties lived in was also purchased by the husband prior to the marriage.
During the marriage, the parties kept their finances separate. Each party had his or her own savings and checking accounts. The husband deposited his salary in his personal checking account and paid for all of the marital expenses. The wife used her income to provide for her own personal needs. She did not accumulate any assets during the marriage nor did she put any of her money into her husband's investments, although she helped her husband make investment choices. The wife obtained a license to broker mortgages and evaluated potential investments for the husband, but the husband had the final say on any investment.
At the conclusion of the trial, the court found each party's negative conduct towards the other was about equal. Therefore, the court found there was "no basis for any distribution other than a fifty percent (50%) or equal distribution of all of the marital assets." The court ordered distribution of the marital assets accordingly. Unfortunately, the court failed to consider certain statutory factors in making the distribution.
The trial court's failure to address and reference the factors mandated by sections 61.075(1)(a)-(i) and 3(d), Florida Statutes (1991) is reversible error. McMonagle v. McMonagle, 617 So.2d 373 (Fla. 5th DCA 1993). In McMonagle, the trial court made the findings of fact required concerning the nature and value of the parties' marital and non-marital assets, however, it did not reference the factors listed in section 61.075(1). This court stated that those factors "should be used in any contested case to justify any equitable distribution of marital assets, fifty-fifty or otherwise." Id. at 373-374 (footnote omitted). This court noted, in reversing, that the statute does not require an equal split of marital assets between parties, but rather that an equitable distribution of assets *1084 should be made with reference to the relevant factors set forth in section 61.075(1).
Even assuming the trial court's blanket statement that there was no basis for any distribution other than fifty-fifty could be read to mean the court did consider the relevant statutory factors, the trial court abused its discretion in finding a fifty-fifty split appropriate. The wife contributed little to the marriage. The parties had no children of their own and they had a housekeeper. The wife points out that she did pick up the husband's children from Hebrew school and take them to their mother's home on occasion and that she even rented video tapes for her husband's entertainment. She also did the laundry and grocery shopping and sent birthday and Hanukkah cards for the husband. Even so, the husband paid the great majority of the wife's educational expenses incurred in the two and a half years it took her to obtain a master's degree in accounting. The wife worked before the marriage and after graduation, and used all but one of her pay checks for her own needs and wants. The husband otherwise paid all the household expenses. The marriage lasted only four years, during which time the parties carefully kept their assets separated. Nothing about the marital history indicates that a fifty-fifty split could be considered equitable. On remand, the trial court shall consider the factors set forth in section 61.075(1) and equitably distribute the marital assets.
The husband challenges the trial court's findings as to what assets were marital assets. We find no error in the trial court's determination that the money market account, the Poinciana property and the annuity were marital assets. Because of the commingling of marital and nonmarital monies in the money market account, from which money was withdrawn and used to purchase the Poinciana property and the annuity, the husband was unable to establish which portion, if any, of these assets was non-marital. We also find no error in the trial court's finding that the enhanced position of the husband's profit sharing plan was a marital asset based upon the wife's testimony that she "managed every asset in that profit sharing plan ...," that she identified and found assets and mortgages, made amortization schedules and tracked high interest rate CD's, and that there was not one asset in the fund that she did not find and bring into the fund. When a non-marital asset appreciates because of efforts by either party, the appreciation is a marital asset. See Heinrich v. Heinrich, 609 So.2d 94 (Fla. 3d DCA 1992) (holding that where the wife assisted the husband in selecting, monitoring and periodically trading stocks in a trust, the appreciated value of the stock portfolio was a marital asset). If the value of assets in an account opened prior to the marriage is enhanced by marital labor or funds, "the enhanced value of the premarital asset becomes a marital asset and further enhancement in value of such marital asset due to inflation or market conditions will become a marital asset." Moon v. Moon, 594 So.2d 819, 822 (Fla. 1st DCA 1992) (citing Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988)).
We do, however, hold that it was error for the trial court to find that the enhanced value of the husband's office building was a marital asset. The office building had a stipulated value of $360,000. The wife agreed she did not contribute to the improvement or enhancement of the building. During the marriage, the $102,000 mortgage balance on the property was paid off with rent monies collected from the P.A. and another tenant. The wife admitted that the money used to make the mortgage payments came from the rental income. Both accountants agreed that rent money deposited in the money market account was used to pay the mortgage. The husband was able to trace $103,248 in rental payments to the money market account. While these payments were placed in the money market account, the evidence regarding them differs in a very significant way from the evidence regarding other assets which were purchased with money from the money market account: the wife conceded these rent payments were used to pay off the mortgage on the office building. Accordingly, the commingling and tracing problem faced with the purchase of other assets using money market funds is avoided.
*1085 The office building is a non-marital asset because it was owned by the husband prior to the marriage. Income from non-marital assets received during the marriage is also non-marital unless the income was treated, used or relied upon by the parties as a marital asset. Section 61.075(5)(b)3, Fla. Stat. (1991). Here, the rental income definitely was not treated as a marital asset. Because the rental income was concededly traced to the mortgage payments on the office building, the trial court erred in finding that $102,000 paid out as mortgage payments on the office building was actually marital money and in awarding the wife one-half the amount paid on the mortgage ($50,978).
In summary, this case is remanded to the trial court for consideration of the factors mandated by subsections 61.075(1)(a)-(i) in making an appropriate division of marital assets. The enhanced value of the office building is not to be included as a marital asset.
AFFIRMED in part; REVERSED in part; REMANDED.
PETERSON J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
I agree with the result in this case. Prior precedent from this court[1] requires us to remand to the trial court to address and reference the appropriate factors listed in section 61.075(1)(a)  (i) and (3)(d), plus any other circumstances not specifically listed in the statute which may be relevant in this particular case, to justify the equitable distribution of the parties' marital assets.[2] Because the appreciated value of one asset was improperly determined to be a marital asset, the trial judge should be free to re-address the totality of equitable distribution of marital assets, and I agree, it need not make a 50/50 split, if that is not equitable in this case.
However, I disagree that we should prejudge this case and declare that a 50/50 split of the marital assets accumulated during the parties' four-year marriage is inappropriate or unacceptable. The trial court should be free to make its own findings on the statutory factors. In my view, one or a combination of less than all of those factors can justify a 50/50 split of marital assets.
For example there was testimony and evidence sympathetic to the wife in this record which, if accepted as true by the trial judge, would justify findings upholding a 50/50 split of the parties' marital assets.
1. The parties met while the wife was a medical patient of the husband. He diagnosed her as having pneumonia and hospitalized her immediately. She was in an abusive marital relationship, had been beaten and given black eyes. She and Dr. Becker both thought she was dying and that it was necessary for her to leave her prior husband. Dr. Becker helped her dissolve her prior marriage, took the lead in forming their relationship which led to this marriage.
2. Because Dr. Becker was Jewish, the wife converted to his religion before they married. This required her to take numerous classes and accomplish a course of study over a year's time period.
3. The wife worked for the husband's medical practice before and after they were married in a number of capacities: handling medical equipment and running simple lab tests, and working as his office manager. He encouraged her to get a degree in accounting so that she could work full time for him. She wanted to work for a C.P.A. firm, which actually hired her. But she had to quit that job at her husband's insistence, because the management of his office was in "complete mayhem."
4. She worked in Dr. Becker's office on the weekends and late at night. She set *1086 up the computer for the office, prepared insurance statements, did the taxes and made sure the office complied with regulations issued by IRS, DEA and HRS.
5. During this marriage the wife was physically abused and psychologically humiliated and belittled by Dr. Becker. She tried very hard to make the marriage work.
6. The wife contributed to the parties' household by cleaning and running it, until she went back to school. They then hired a maid, but while attending school and working for the husband part time, the wife did all the laundry, cooking and grocery shopping. She also assisted the husband by driving his children to their home from school two to three times a week and making contacts with his relatives. Her two children from a previous marriage were not both welcome in their home at the same time. She redecorated their home and the husband's office.
7. The parties lived frugally because they hoped to save enough money to retire to Colorado. She helped him purchase CDs, research interest rates, suggested purchase of securities after consulting with a broker, and tried to keep their investment portfolio in balance. She also managed all the assets in the husband's profit sharing plan. She found the assets and mortgages at discounts, made amortization schedules, and kept them earning at the highest possible interest rates.
In short, I do not think it is necessary, nor required under Florida's equitable distribution statute, for a woman to bear children, have a long-term marriage, not have been married previously, and have done all the floor scrubbing and sock-darning, in order to be entitled to a 50/50 split of the marital assets acquired by the parties during their marriage. Surely there are other valid ways a spouse can contribute to a marital relationship. And, there well may be some in this case that occur to this trial judge, which justify his ultimate determination in this case. Let's wait and see what he says.
NOTES
[1] See, e.g., Sevor v. Sevor, 627 So.2d 609 (Fla. 5th DCA 1993); Pearce v. Pearce, 626 So.2d 294 (Fla. 5th DCA 1993); Cortez v. Cortez, 625 So.2d 965 (Fla. 5th DCA 1993); Plyler v. Plyler, 622 So.2d 573 (Fla. 5th DCA 1993); McMonagle v. McMonagle, 617 So.2d 373 (Fla. 5th DCA 1993); Bussey v. Bussey, 611 So.2d 1354 (Fla. 5th DCA 1993).
[2] § 61.075, Fla. Stat. (1991).