695 So.2d 364 (1997)
Dana Raye OXLEY, Appellant,
v.
Thomas E. OXLEY, Appellee.
No. 95-1540.
District Court of Appeal of Florida, Fourth District.
February 19, 1997.
As Amended on Denial of Rehearing June 4, 1997.
Donald J. Sasser of Donald J. Sasser, P.A., West Palm Beach, for appellant.
Neil B. Jagolinzer of Christiansen and Jacknin, West Palm Beach, for appellee.
*365 STONE, Judge.
In addition to alimony issues, we are called upon to determine how child support and equitable distribution is affected by the husband's right to undistributed income from, and the increased valuation of, an inter vivos trust, and the increased value of a corporation. With respect to each, the increased value is attributable to the efforts of third parties on behalf of the husband.
The parties were married for twelve years and have two children, ages nine and eleven. The parties' marital income came primarily from trust distributions to the husband which he supplemented with a salary taken as president of a family holding company. The wife has a high school education and no significant work experience or training, other than a private pilot's license and possible potential to earn a commercial pilot's license. Her last job was as a waitress. She is 32, approximately 18 years younger than the husband.
The trust is revocable and was established by the husband prior to the marriage following termination of a similar trust that had been set up for the husband by his father. The trust provides that all income is payable to the husband, although historically the husband has chosen to leave most of his income undistributed. The trust investment decisions are made, for the husband's exclusive benefit, by the trustee based on the advice of the husband's father and brother. It is an active trust, with multiple investments, including an interest in several working oil wells. On one occasion, the husband did invest $400,000 of trust funds through a separate money manager. The value of the trust is $7,000,000; at the time of the marriage it was worth under $2,000,000. The increase was attributable to undistributed income, of which $4,600,000 has accumulated during the course of the marriage and upon which he has paid personal income tax. The trust also owns and pays the expenses on the marital home. The husband has other non-marital assets not at issue here.
The husband also owns 50% of Boca Polo, Inc., technically "purchased" from his father for a nominal $12,000, but found to be a gift, now worth at least $4,500,000. As company president, his activities have been largely ministerial and ceremonial, leaving the management and investment decisions to others, although at one time he did briefly manage the business.
The trial court determined that the trust, including its undistributed income, and the corporation, were non-marital assets, thereby limiting the wife's equitable distribution to $43,000 and some jewelry. The court found that the parties lived on an income of $15,000 per month, which did not include the house operation and maintenance expenses, charitable contributions, travel expense, or gifts by the husband to his children of a former marriage, which were paid by the trust on his behalf. The court also found that the wife and children need $7,500, plus the costs of operating and maintaining the home per month net, in order to maintain their standard of living. The court determined that the wife can earn $15,000, gross, per year.
The husband was ordered to pay rehabilitative alimony of $4,000 per month for five years and guideline child support of $1,300 per month per child. The record is silent as to any evidence of a rehabilitation plan, or any basis for concluding that the wife may be able to obtain future employment in aviation, even if she did become eligible to take a commercial pilot exam in the future. The court awarded no permanent alimony. The wife and children have possession of the house during minority.

ALIMONY
Failure to award permanent alimony under these circumstances is an abuse of discretion. Steinberg v. Steinberg, 614 So.2d 1127 (Fla. 4th DCA), rev. denied, 626 So.2d 208 (Fla.1993); Ghen v. Ghen, 575 So.2d 1342 (Fla. 4th DCA 1991); McLean v. McLean, 652 So.2d 1178 (Fla. 2d DCA 1995); Hanrahan v. Hanrahan, 618 So.2d 779 (Fla. 1st DCA 1993); Kanouse v. Kanouse, 549 So.2d 1035 (Fla. 4th DCA 1989). In Steinberg, we recognized that, where there is no issue of ability to pay significantly more, an award of rehabilitative alimony alone is proper only where the record supports a conclusion that the spouse is capable of establishing a standard *366 of living reasonably commensurate with that enjoyed in the marriage.
In Ghen, the couple had been married for 11½ years and had one seven-year-old child. The wife had a high school education and gave up further education to work while her husband finished medical school. Refusing to overturn the trial court's finding that the wife was capable of making $20,000 per year, this court noted the lack of a finding regarding the former wife's ability to be rehabilitated to any vocation where she could make any greater amount than $20,000, "which would be patently insufficient to support her in even a semblance of the marital life-style, given the husband's net income of at least $150,000 and her financial affidavit showing a need of $6,000 per month to maintain herself and her child." Id. This court noted the trial court's emphasis on the wife's youth in denying permanent alimony may have been a justification "if through rehabilitation the wife can establish a standard of living reasonably commensurate with the standard set throughout the marriage." Id. (emphasis in original) Because the record did not support such a finding, this court reversed the award of rehabilitative alimony.
In Kanouse, this court reversed a rehabilitative alimony award of $1,500 per month for five years to the former wife, a licensed attorney, who had permitted her husband's career and raising of the minor children to take priority over her own career goals during the fourteen-year marriage. Kanouse, 549 So.2d at 1036-37. This court noted the principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse. Id. at 1036 (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980)). It noted a person is not self-supporting simply because he or she has a job and income. Rather, the standard of living must be compared with the standard established during the course of the marriage. Kanouse, 549 So.2d at 1036 (citing O'Neal v. O'Neal, 410 So.2d 1369, 1371 (Fla. 5th DCA 1982)). This court cited with approval language from O'Neal, finding that a divorced wife is entitled to live in a manner reasonably commensurate with the standard established by the husband during the course of a long-term marriage, and the court must base an award of alimony to the wife on the ability of her husband to pay that award and her financial needs in light of the standard of living enjoyed during the marriage. Id.
Absent a plan that could produce income to the wife beyond that imputed by the court, it is apparent that the wife is in need of permanent alimony. The trial court, incident to a motion for rehearing, indicated that it had "rethought" the issue of alimony, concluding that rehabilitative alimony was awarded due to the wife's "undeveloped capacity for self-support." The extent to which the court may have also weighed the length of their marriage is not clear. However, in this appeal we need not resolve the extent to which a court has discretion to weigh the wife's entitlement to alimony in a twelve-year marriage, albeit with children, differently than in a longer term relationship. There is nothing in the record or judgment, other than that the wife is young and relatively healthy, supplying any guidance as to what may reasonably be expected to occur over the next five years that would support terminating alimony at that time. See McLean. There is no question that the husband has the ability to pay, as his available income exceeds $45,000 per month. We have considered McCauley v. McCauley, 599 So.2d 1002 (Fla. 2d DCA 1992), Martinez-Cid v. Martinez-Cid, 559 So.2d 1177 (Fla. 3d DCA 1990), and McLauchlin v. McLauchlin, 580 So.2d 812 (Fla. 2d DCA), rev. denied, 591 So.2d 182 (Fla.1991), and deem each inapposite.
Therefore, we reverse the alimony award with direction that the court either re-examine the rehabilitation plan, award permanent periodic alimony, or provide a basis for determining permanent alimony at the end of a rehabilitative term. Additionally, as there is some confusion as to the figures adopted by the court, it should, at the same time, re-examine the needs of the wife based on apparent undisputed living expenses of at least $10,000 per month net of taxes, plus house expense, and not the $7,500 utilized in the judgment.
We affirm the trial court's imputing income to the wife. On this record, there is no question that the wife will work and is able to *367 do so, the question being only her ability to obtain employment at more than minimum entry wages at an unskilled position.

CHILD SUPPORT
The trial court erred in computing the amount of child support based on the father's having an income of $15,000 per month where the record reflects his right to receive income of three times that sum. The trust terms require distribution of all income. His election not to accept all of the income he was entitled to receive from the trustee is effectively a decision to put aside a portion of income for savings and investment. Clearly, the father's "income," for the purpose of determining child support, includes trust income. Page v. Page, 371 So.2d 543 (Fla. 3d DCA 1979). Trust income is recognized in section 61.046(4), Florida Statutes, which defines income as
(4) "Income" means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, ... trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government.
Additionally, section 61.30(2)(a)12 provides, in calculating income, that "Income shall be determined for the obligor and for the obligee as follows: ... (a) gross income shall include ... 12. Income from royalties, trusts, or estates." Section 61.30(2)(a)12, Fla.Stat. (1993).
We can discern no rational basis to conclude that a parent may reject authorized distributions from a trust in computing the parent's income in determining the amount of child support. Such a practice would be consistent with neither public policy nor legislative intent. Here, the husband's actual income exceeds $550,000 per year. Therefore, as the findings are inconsistent with the record, we reverse the award of child support and remand for further proceedings without restricting the court's discretion to make any findings or award otherwise authorized under the statute.

EQUITABLE DISTRIBUTION
It is undisputed that both the trust and the corporation were initially non-marital assets. The question is whether either have lost that status, in part, as to income produced but not distributed, or as to increased asset value during the marriage, as a result of the husband's limited role and conduct visa-vis each. With regard to the increased value of the holding company, the trial court concluded that the corporations it controlled had not increased in value as a result of the husband's marital effort, labor, or income, and were therefore non-marital assets. The record supports the conclusion that Boca Polo, Inc. did not increase in value as a result of any business decisions or labor of the husband, notwithstanding his being the president of the company and his performing various non-essential (from an income and asset management perspective) functions for it. Although some of the increase was clearly passive, as a result of market forces, other aspects of the increased value of the corporations resulted from selling off property and management activity performed by others, for the husband's benefit and with his consent, conduct that might have supported a conclusion that a significant portion of the increase in value was due to marital effort if that effort had, in fact, been performed by the husband rather than by his agents.
With regard to the increased value of the trust, it is clear that the increased value and income resulted from the business decisions and management of others. The husband's only active role was deciding to maintain the trust and trustee, and to permit the trustee to take his father's and brother's advice and to continue to manage the corpus, and retained income, for his benefit.
The relevant portion of section 61.075(5)(a)2, Florida Statutes, defines marital assets as including: "the enhancement in value and appreciation of nonmarital assets resulting ... from the efforts of either party during the marriage...." Section 61.075(5)(b)3, Florida Statutes, provides that nonmarital assets include all income derived from nonmarital assets during the marriage, unless the income was treated, used, or relied on by the parties. Here, it is undisputed *368 that the undistributed trust income did not fall within one of these exceptions.
The increased value of a non-marital asset is generally found to be a marital asset where there is co-mingling or expenditure of marital funds involved, circumstances not present in this case, or where the asset has appreciated due to the marital efforts of a party and not simply due to passive market forces. E.g., Oldham v. Oldham, 683 So.2d 579 (Fla. 4th DCA 1996); Pagano v. Pagano, 665 So.2d 370 (Fla. 4th DCA 1996); Robbie v. Robbie, 654 So.2d 616 (Fla. 4th DCA 1995); Watford v. Watford, 605 So.2d 1313 (Fla. 4th DCA 1992); Pleas v. Pleas, 652 So.2d 435 (Fla. 1st DCA 1995); Dunagan v. Dunagan, 664 So.2d 68 (Fla. 3d DCA 1995). But see Munro v. Munro, 630 So.2d 199 (Fla. 3d DCA 1993); Heinrich v. Heinrich, 609 So.2d 94 (Fla. 3d DCA 1992).
The record would have supported a conclusion that the increased value of the trust and holding company did not result from passive appreciation sufficient to necessarily defeat a claim that the increase is a marital asset if the court had found that the increase was attributable in part to marital effort.[1]E.g., Stevens v. Stevens, 651 So.2d 1306 (Fla. 1st DCA 1995); Becker v. Becker, 639 So.2d 1082 (Fla. 5th DCA 1994). Here, the trial court was not required to make this decision, because it determined that the husband's role, as described, did not constitute marital effort contributing to the appreciation in value.[2]
In Robbie, we determined that the husband's 9.5% share of his family's enterprise could not be deemed non-marital where the husband was employed full-time in an executive capacity, notwithstanding that he did not make the corporate policy and command decisions but simply acted in a managerial role implementing management details. There, we recognized that Robbie's labor contributed to the enhanced value of the business. Here, the question is inverted. As to the trust, the issue is whether the making of the ultimate decision to place (or retain) his assets in trust, to select and maintain the trustee, and to allow the trustee to follow the advice of the father and brother, constitutes "effort" within the meaning of the statute. As to the corporations, the issue is whether the husband's choosing, as president and 50% shareholder, to ratify the decisions of subordinates and agents, and to permit others to initiate and implement corporate policy, constitutes marital effort where he elects not to personally assume or exert greater influence in making and implementing decisions other than in his ceremonial, ratifying, and non-essential activity. In sum, does delegating decision-making and management activities to agents insulate the increase in value of non-marital assets while the husband is able to travel, engage in polo or charitable activities, or otherwise occupy his time, because he places, and can afford to place, trust and confidence in others to handle his financial affairs?
We conclude that the record supports the trial court's conclusions regarding the absence of any individual effort by the husband, within the ordinary meaning of the term "effort" (or "labor") as used in the statute and existing case law. Therefore, the increased value of the trust and holding company were preserved as non-marital assets, requiring that we affirm the equitable distribution of the judgment. To hold otherwise would effectively make all spouses partners in the increased value of all nonmarital assets that does not result from passive appreciation, ignoring the balance of the statutory criteria. Such a significant expansion of definition is better left to the legislature to consider.
We reverse and remand for further proceedings on the issues of alimony and child support. As to all other issues, we affirm.
STEVENSON, J., concurs.
FARMER, J., concurs in part and dissents in part with opinion.
*369 FARMER, Judge, concurring and dissenting.
I agree with Judge Stone on everything except the equitable distribution.
In my opinion, the appreciation of the trust assets during the marriage is marital property as a matter of law. The fact that the husband passively allowed his hand-picked agents to make the decisions that resulted in the appreciation does notin my opinion make this a mere passive investment like a certificate of deposit.
To hold that it does invites persons of wealth to place their property in a revocable trust with themselves as trustee, hire a financial manager to make the daily investment decisions, and thereby erect a section 61.075(5)(a)2 shield around this appreciation when they are sued for divorce. I do not believe that is what the legislature had in mind. I would hold as a matter of law that the facts in this case establish the appreciation as a marital asset because it resulted from the efforts of the husband in setting the whole scheme in place.
NOTES
[1] We need not address any issue as to apportioning the increase between passive appreciation and that portion attributable to effort.
[2] We note that there is record evidence that the husband suffered a serious head injury in 1968. The present effect of this injury on the husband's ability to manage is apparently disputed, although the trial court did find that he suffers residual effects from that injury which convinced his family to manage his affairs for him.