868 So.2d 3 (2004)
Eugene J. O'NEILL, Appellant,
v.
Marylee O'NEILL, Appellee.
No. 4D02-4414.
District Court of Appeal of Florida, Fourth District.
January 28, 2004.
Rehearing Denied March 5, 2004.
*4 Eugene J. O'Neill, Vero Beach, pro se.
Chet E. Weinbaum, Fort Pierce, for appellee.
PER CURIAM.
This appeal arises out of the dissolution of the marriage of Eugene and Marylee O'Neill. According to the husband, the trial court erred in fashioning the equitable distribution of the couple's retirement account, failed to consider the tax consequences of utilizing the retirement account to equalize the equitable distribution scheme, and awarded excessive alimony. We affirm the final judgment in all respects and write to address the claims regarding the equitable distribution of the retirement account.
The husband brought the retirement account into the marriage in July of 1984. At that time, the account balance was $27,111.25. As of October 2000, the retirement account had a balance of $397,045.90. The trial court found that any return on investment or enhancement in value of the original $27,111.25 was a marital asset as a consequence of the husband's active management of the account during the marriage. The husband challenges this finding on appeal.
Our legislature has defined which assets will be deemed "marital" and subject to equitable distribution and which are "nonmarital." Section 61.075(5)(a), Florida Statutes (2000), provides in relevant part that a "marital" asset includes: assets acquired during the marriage; "[t]he enhancement in value and appreciation of nonmarital assets resulting ... from the efforts of either party during the marriage"; and "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs." In contrast, "nonmarital" assets include assets acquired before the marriage and all income derived from nonmarital assets during the marriage, unless the parties treat such income as a marital asset. See § 61.075(5)(b).
First, the husband contests the trial court's factual finding that he actively managed the account, insisting that any efforts on his part were negligible. The husband, himself an attorney, has elected to provide this court with only excerpts of the hearing held before the trial court, rather than a complete transcript. Consequently, he cannot meet his appellate burden, i.e., demonstrating that the trial court's factual findings are not supported by competent substantial evidence. See Kovalchick v. Kovalchick, 841 So.2d 669 (Fla. 4th DCA 2003). Further, despite the husband's assertions to the contrary, the excerpts that have been provided do not demonstrate that the increase in value of the retirement account was solely the result of passive earnings. The husband's expert, Jerry Reese, did not testify that the approximately nine percent annualized rate of return on the account had nothing to do with Mr. O'Neill and was simply the result of market conditions.
Alternatively, the husband argues that regardless of how much marital effort he put into managing the account, such efforts should not serve to deprive him of the passive earnings that have accumulated on the nonmarital portion of the account. In essence, the husband argues that any increase in value of the $27,111.25 *5 should be apportioned between the increase due to marital labor and the increase due to time and market conditions, with the latter being designated a nonmarital asset that is not subject to equitable distribution. See Young v. Young, 606 So.2d 1267 (Fla. 1st DCA 1992).
Under the apportionment approach exemplified by Young, the utilization of marital labor would not necessarily serve to render any and all increases in value on the nonmarital portion of the account a marital asset. In such an approach, once it is established that marital labor was used, the burden falls to the party claiming that the increase is nonmarital to establish whether any part of the increase was the result of passive market conditions and, thus, is exempt from equitable distribution. See id. at 1270. The only evidence in the excerpted record before us is that (1) in some years the retirement account was up by as much as twenty percent and, in others, down by as much as seven; (2) the account enjoyed an annualized rate of return of nine percent; and (3) this annualized nine percent rate of return was somewhat lower than the rate achieved by other clients of the husband's expert. There is, however, no evidence that this nine percent was purely the result of time and market conditions. In the absence of such evidence, even if this court applied the apportionment approach, the husband has not demonstrated reversible error.
AFFIRMED.
POLEN, KLEIN and STEVENSON, JJ., concur.