945 So.2d 601 (2006)
Leslie P. STEELE, Appellant,
v.
Larry E. STEELE, Appellee.
No. 4D05-4556.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
*602 Mary B. Thomas of Thomas & Thomas, Attorneys at Law P.A., Stuart, for appellant.
R.J. Ferraro, III, of Ferraro & Ferraro, P.A., Stuart, for appellee.
POLEN, J.
This appeal arises from an August 11, 2005 final judgment of dissolution of marriage. We affirm. In examining the thorough language of the trial court's final judgment, we are convinced that there was no abuse of discretion.
Larry and Leslie Steele, hereinafter "former husband" and "former wife," married November 3, 1996 and separated July 19, 2002. An action for dissolution of marriage was filed soon thereafter. Wife appeals, contending that the trial court erred in determining the value of former husband's pre-marriage 401(k) contributions was a nonmarital asset and therefore not subject to equitable distribution.
"The standard of review of a trial court's determination of equitable distribution is abuse of discretion." Kovalchick v. Kovalchick, 841 So.2d 669, 670 (Fla. 4th DCA 2003) (citations omitted). § 61.075(3), Fla. Stat. (2002), requires that distribution of marital assets and liabilities be supported by "factual findings in the judgment or order based on competent substantial evidence. . . ."
Of the $270,000 in assets with which former husband entered the marriage, approximately $220,000 represented his interest in an employer-sponsored 401(k) plan. During the marriage, former husband's employer modified the plan to offer its employees the ability to monitor and control their investments. The new plan allowed employees to move assets among nineteen different investment vehicles, i.e., mutual funds. Former husband utilized this feature and, during the almost six-year marriage, made three such transfers, without withdrawing any funds.
At trial, former wife argued that the three transfers represented "marital effort" and therefore transformed husband's entire 401(k), including contributions made and value accumulated before the marriage, into a marital asset. The trial court disagreed, finding that the transfers were "extremely de minimis" in light of the relatively small amount that husband contributed *603 to the plan during the marriage.[1] When compared to the total contributions that husband made over more than thirty-six years of participating in the plan, the court found that the transfers did not work to convert the portion of his pre-marriage contributions, eighty-nine percent of the plan's value, in whole or in part into a marital asset.
Section 61.075(a) defines marital assets as including the "enhancement in value and appreciation of nonmarital assets resulting . . . from the efforts of either party during marriage." § 61.075(a), Fla. Stat. (2002). In contrast, nonmarital assets include assets acquired before the marriage and all income derived from nonmarital assets during the marriage, unless the parties treat such income as a marital asset. § 61.075(5)(b), Fla. Stat. (2002).
On appeal, former wife again argues that the trial court should have classified husband's entire 401(k) as a marital asset. In so arguing, she claims that the trial court failed to recognize that husband actively managed his 401(k) investments, including his pre-marriage 401(k) contributions, during the marriage. In support, former wife relies primarily on Chapman v. Chapman, 866 So.2d 118, 118 (Fla. 4th DCA 2004) (affirming trial court's finding that annual return on husband's retirement fund was marital property because his brokerage records indicated that he actively traded stocks and bonds). However, unlike Chapman, the husband in this case did not actively trade stocks or bonds. See id. He only made three transfers during the six-year marriage, and these transfers had only a minimal impact on the value of his 401(k). Husband's forensic accountant testified that, had husband not made any transfers, the value of his 401(k) would have been $481,587, only $3,053 less than its actual value, $484,640, at the time of filing for dissolution. Cf. O'Neill v. O'Neill, 868 So.2d 3, 4 (Fla. 4th DCA 2004) (rejecting husband's claim that enhancement in value of his retirement account was a nonmarital asset because husband presented no evidence to support his contention that the performance in his holdings "had nothing to do with [him] and was simply the result of market conditions"). Therefore, we agree with the trial court that the transfers were de minimis and did not convert former husband's pre-marriage 401(k) contributions, in whole or in part, into a marital asset.
As to the other issues raised by former wife on appeal, i.e. alimony, valuation of the marital home and method of disbursement of the marital portion of former husband's 401(k), we also affirm.
Affirmed.
MAY, J., concurs.
KLEIN, J., concurring specially with opinion.
I agree entirely with the majority opinion. I am writing separately to suggest that a marital increase on premarital securities, if managed by someone other than the spouse, should not become marital assets.
In this case, as in many cases, the husband's employer had a number of mutual funds in the 401(k) plan from which the husband could make selections. The wife contended that the husband's activity during the marriage, in changing from one *604 fund to another, should make the return on the investments marital property. The trial court correctly concluded that the husband's selection of mutual funds would not constitute an enhancement resulting "from the efforts" of the husband under section 61.075(5)(a). That decision was consistent with our opinion in Oxley v. Oxley, 695 So.2d 364 (Fla. 4th DCA 1997), in which the husband had non-marital trust investments, which were increased during the marriage by the other people he allowed to manage the trust.
Although it is not necessary for us to address the issue in this case, because the trial court found no marital effort contributing to the appreciation in value, I would, in the appropriate case, hold that, where the spouse is not actively trading individual stocks and bonds, as the husband was in Chapman v. Chapman, 866 So.2d 118 (Fla. 4th DCA 2004), any increase is as a matter of law non-marital.
We have already recognized that an increase in pre-marital assets, achieved by activity during the marriage, is distinct from an increase which is "purely the result of time and market conditions." O'Neill v. O'Neill, 868 So.2d 3, 5 (Fla. 4th DCA 2004), Chapman v. Chapman, 866 So.2d 118 (Fla. 4th DCA 2004), Oxley v. Oxley, 695 So.2d 364 (Fla. 4th DCA 1997); Young v. Young, 606 So.2d 1267 (Fla. 1st DCA 1992). In Chapman we used, based on the testimony of one of the experts, the S & P 500 Index as a benchmark for a passive increase on stocks and a bond index for bonds. The husband in Chapman achieved returns substantially greater than the benchmarks by directly and actively trading stocks and bonds, and it was the return in excess of the benchmarks which was found to be marital property.[2]
In the present case each spouse went to the expense of obtaining an expert to testify that the husband's activity did or did not result in activity resulting in an increase in marital funds. This testimony was not only costly, but time consuming. For all we know, this case might have settled if this issue had been off the table. I would take it off the table.
NOTES
[1] Former husband contributed $49,118 to his 401(k) plan during the marriage. This amount represented approximately eleven percent of the plan's value as of filing for dissolution. The majority of the plan's value as of filing consisted of the $220,000 in 401(k) assets with which former husband entered the marriage in addition to the appreciation of those assets during the marriage.
[2] For whatever it is worth, most actively managed mutual funds, do worse, not better, than a passive benchmark such as the S & P 500 Index. Harold R. Evensky, Wealth Management, The Financial Advisor's Guide to Investing and Managing Client Assets 328 (1997); Scott Woolley, The Index Insurgents, http://www.forbes.com/ forbes/2006/1030/064. html. It follows that the spouse who selects mutual funds has less than a fifty percent chance of doing as well as a passive investment in an index fund over the long term. Where the actively managed funds do worse than the benchmark, the spouse who would claim part of the increase does not bear the loss, so why give the spouse one half of the increase?