GROSS, C.J.,
concurring specially.
The trial judge did not use the S & P 500 Index to measure passive appreciation of the husband’s premarital brokerage account, so the wife received assets that had appreciated not only “from the efforts” of the husband, but which had grown in value because of market forces. Because the husband presented no evidence justifying the use of the S & P 500 Index in this case, I agree with the majority that the trial judge did not abuse his discretion in refusing to apply it.
The husband actively traded in his brokerage account. After subtracting deposits from nonmarital sources, the amount by which the date of filing value of the husband’s brokerage account exceeded its value on the date of the marriage was “presumed” to be a marital asset. § 61.075(7), Fla. Stat. (2007). Since he claimed that a portion of the increase was non-marital, the burden was on the husband “to establish whether any part of the increase was the result of passive market conditions and, thus, is exempt from equitable distribution.” O’Neill v. O’Neill, 868 So.2d 3, 5 (Fla. 4th DCA 2004); § 61.075(7), Fla. Stat. (2007). Given the absence of testimony to support the use of the S & P 500 Index in this case, the trial judge did not err in refusing to rely on it.
In most cases, when there is expert testimony to support the use of a recognized stock index to measure passive appreciation in a portfolio, the party offering the index will satisfy its initial burden of proof to show that a portion of the account is nonmarital. When it comes to determining the effects of marital “efforts” on an asset under section 61.075(5)(a)(2), Florida Statutes (2007), a brokerage account containing stocks is unlike a small business owned by one of the spouses. The growth of a business run by a spouse is directly attributable to marital efforts. While a spouse may decide to purchase a stock in a brokerage account, unless the spouse is Warren Buffett, the appreciation in value of the stock is unrelated to the *840 spouse’s decision to purchase it.[1] A stock’s appreciation depends on the way in which the company is run and on how the market values the company’s prospects. A stock index is one way of measuring the effect of market forces which are unrelated to marital efforts.
In a rising world market such as the 2003-2007 one in this case, where the holdings in a brokerage account have appreciated in value, there will always be an element of passive appreciation due to market forces. For this reason, a recognized index such as the S & P 500 Index, the Wilshire 5000 Total Market Index, or the FTSE All-World Index[2] should be used to measure passive factors influencing the appreciation of a stock portfolio. Stock indexes are commonly used by investment fund managers as an inexpensive way to buy a diversified portfolio of stocks. The price of a stock index fluctuates with the price of the underlying basket of stocks that the index represents. The S <& P 500 might well have been appropriate to measure passive appreciation in this case; that index includes 500 large-capitalization, actively traded common stocks, many of which have international operations, and is considered a bellwether for the American economy. However, the husband traded many foreign stocks and there was no testimony to allay the trial judge’s concern that that index was not proper here. This case thus turns on a failure of proof.
As the trial judge noted, our interpretation of Chapter 61 in this area has created a distinction between people who turn their premarital investments over to paid advisors and those who actively manage their brokerage accounts; the appreciation created by active managers is a marital asset, while those who rely on money managers, or who trade only a de minimis amount, maintain the non-marital status of the account.
Why we have adopted this distinction is unclear. The decision to hire an investment manager is a marital “effort” within the meaning of the statute, if only slightly so; the decision to purchase 1,000 shares of Apple stock in 2004 and to hold it until 2007 would have involved marital “effort” that generated a large gain, but it would fall under the one trade de minimis rule of Steele v. Steele, 945 So.2d 601 (Fla. 4th DCA 2006). Section 61.075(5)(a)(2). defines a “marital asset” as including an “enhancement in value and appreciation” resulting from “the efforts” of a party during the marriage; it does not distinguish between a great effort and a little one. Our decisions in this area appear to have departed from the language of the statute.
Here, the wife entered the marriage with $1,267,862 in premarital assets. All of her assets were managed by Bessemer Trust. At the time the divorce action was *841 filed, the account was worth $2,067,044. Presumably because the wife did not actively manage her account, the husband made no claim on the appreciation of the wife’s holdings. As the trial judge observed, based on our decision in Steele, because the wife “allowed an outside management company to trade her portfolio,” the increase in value of her account was “non-marital to her.” The law has not led to a fair result in this case.

. While the husband actively bought and sold stocks, he did not engage in a computerized or other trading strategy that profited off short term price movements.

. Barron's Dictionary of Finance and Investment Terms defines an "index” as a
statistical composite that measures changes in the economy or in financial markets, often expressed in percentage changes from a base period or from the previous month.... Indices also measure the ups and downs of stock, bond, and commodities markets, reflecting market prices and the number of shares outstanding for the companies in the index. Some well-known in-dices are the Dow Jones Averages, the New York Stock Exchange Composite Index, the American Stock Exchange Composite Index, the Standard & Poor’s 500 Index, the NASDAQ Composite Index, the Russell 2000 Index and the Value Line Composite Index.
John Downes & Jordan Elliot Goodman, Barron’s Dictionaiy of Finance and Investment Terms 273-74 (5th ed. 1998).