DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROSA H. NARANJO,**
Appellant,

v.

**FREDDY RAUL OCHOA,**
Appellee.

No. 4D21-3084

[July 5, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 502020DR005681.

Christopher R. Bruce and Ashley M. Bustamante of Bruce Law Firm, P.A., West Palm Beach, for appellant.

Michael S. Dyer of Law Office of Michael Samuel Dyer, West Palm Beach, for appellee.

GERBER, J.

The former wife appeals from the circuit court's final judgment of dissolution of marriage. The former wife primarily argues the circuit court erred by equitably distributing, as a marital asset, the appreciation on the former wife's nonmarital advanced inheritance. The former wife more specifically argues the former husband failed to prove by competent substantial evidence that the investment of the advanced inheritance into four mutual funds, and then employing a buy-and-hold strategy, constituted the requisite "efforts"—as that term is used in section 61.075(6)(a)1.b., Florida Statutes (2020), and interpreted by our court and other district courts—to have allowed the circuit court's determination that the advanced inheritance's appreciation was a marital asset.

We agree with the former wife's argument. Thus, we reverse the final judgment's equitable distribution determination as to the advanced inheritance's appreciation. We remand for the circuit court to enter an amended final judgment determining that the advanced inheritance's appreciation shall be treated as the former wife's nonmarital asset.

## *Procedural History*

In December 2012 and February 2013, the former wife's mother gifted a total of $665,000.00 to the former wife as an advanced inheritance. Within weeks of the February 2013 transfer, the former wife transferred $660,000 of those funds into a brokerage account which was separate from the former wife's and the former husband's joint bank account. Over the next two months, the majority of the $660,000.00 in the former wife's brokerage account was used to purchase shares in three mutual funds.

In 2016, the former wife's mother gifted another $170,000 to the former wife as a further advanced inheritance. Within a few days, the former wife transferred the $170,000 into her separate brokerage account. The $170,000 was then used to purchase shares in a fourth mutual fund.

In 2020, the former husband filed a petition for dissolution of marriage, and the former wife filed a counterpetition for dissolution of marriage. By the time the parties had proceeded on their petitions, the mutual funds had generated $892,687.94 in appreciation.

At trial, for purposes of the circuit court's equitable distribution determination, the former husband and the former wife contested whether the circuit court should deem the $892,687.94 appreciation as a marital asset or a nonmarital asset.

The former husband argued that pursuant to section 61.075(6)(a)1.b., Florida Statutes (2020)—which defines marital assets as including "[t]he enhancement in value and appreciation of nonmarital assets resulting from the *efforts of either party* during the marriage" (emphasis added)—the circuit court should deem the appreciation as a marital asset because he had performed the research and purchased the four mutual funds which had generated the appreciation. According to the former husband, "I did the research all by myself. This took hours." The former husband later testified that his investment strategy as to the couple's investments during the marriage was "typically buy and hold. I was not a day trader and I wasn't looking to invest small sums."

In contrast, the former wife testified that she, and not the former husband, had performed the research and purchased the four mutual funds which had generated the appreciation. Further, the former wife's testimony sought to establish—for what would be her later argument—that regardless of who had performed the research and selected the mutual funds, the circuit court should deem the appreciation as a nonmarital asset because neither party's "efforts" had resulted in the "enhancement

2

in value and appreciation" of the invested funds under section 61.075(6)(a)1.b., Florida Statutes (2020). The former wife testified:

> It was a buy and hold strategy. I selected some funds, purchased them and left them alone.
>
> …
>
> Because I didn't want to be tracking this every day or every week or every month, I work full time. I was not in finance. I just wanted something that would grow the money in a better way than just leaving it in CDs or in [a] money market account.

In closing arguments, the former husband's counsel emphasized that regardless of the parties' factual dispute over who had researched and selected the mutual funds, the fact that either of them had done so should cause the circuit court to deem the advance inheritance's appreciation to be a marital asset:

> [The former husband] is … saying he picked the [mutual funds]. The [former] wife says she picked the [mutual funds].
>
> But, Your Honor, it actually doesn't make much of a difference because if [a spouse] take[s] an asset and … enhance[s] the value of the asset and that enhancement is made during the marriage, then you have marital enhancement.
>
> So even if the [former] wife did pick the [mutual funds], she took her mother's money and she's enhanced the value by picking these [mutual funds]. If [the former husband] did that, then he took the money and he enhanced it as well.
>
> So the appreciation in these [mutual funds] is twofold.
>
> One, passive appreciation because the market has gone up.
>
> Two, active appreciation because these [mutual funds] were picked by one [spouse] or the other.
>
> There is no such thing as a nonmarital picking of [mutual funds] that occurs during the marriage.

3

During the former wife's closing argument, the former wife's counsel relied on *Oxley v. Oxley*, 695 So. 2d 364 (Fla. 4th DCA 1997), and other cases for the general proposition—using counsel's words—that if a spouse delegates the investment management of a nonmarital asset to somebody else, "there is not marital effort that makes … an otherwise nonmarital asset's enhancement [into a] marital [asset]." According to the former wife's counsel:

> The [former] wife outsourced the management of her investments [to] the four fund managers.

> … [M]y suggestion is the Court should look at her … four one-time trades as no different than the husband in *Oxley* picking a trustee to manage his investments.

> She picked four investment advisors and her only responsibility with managing this money after that was to let those advisors do their jobs. And they did that through the four funds.

> And, you know, some did it better than the others, but my client's role was to delegate that out and that's basically what happened in the *Oxley* case.

> …

> And in [*Steele v. Steele*, 945 So. 2d 601 (Fla. 4th DCA 2006),] the appellate court affirm[ed] a trial court's findings that the husband's three trades in a nonmarital investment account over an almost six-year marriage were extremely de minimis and found that those three trades did not represent marital effort that would allow the wife in that case to entitlement of the enhancement of the account.

> And here we have four trades during the intact marriage. [*Steele*] had three. My suggestion is that the wife's efforts[,] to the extent they could be considered the type of efforts that are marital efforts that could lead to enhancement[,] are de minimis in nature based on that case.

> …

And then there's … [*Doerr v. Doerr,* 751 So. 2d 154 (Fla. 2d DCA 2000)].

And what the *Doerr* decision … stands for is that the mere act of a non-owner spouse giving minor investment advice -- in that case it was the wife telling her husband to reinvest[] dividends during the marriage of his nonmarital stock -- [the appellate court] said that minor investment advice does not constitute marital effort, creating entitlement to the appreciation of nonmarital stock on behalf of the non-owner spouse.

…

… [T]hose cases all apply to create a situation of here[,] the enhancement in this account is not as a result of marital efforts.  I think it was the testimony, at least of [the former wife], that the investments were made, it was a buy and hold strategy, it is not like somebody was trading commodities every day or anything like that.  And the money went up and down with the market.  Fund managers did their job, however it was, and that's all that happened here with that.

Following the final hearing, the circuit court entered a final judgment of dissolution of marriage.  As part of the final judgment's equitable distribution determination, the circuit court made the following pertinent findings of fact and conclusions of law:

The statements for [the former] [w]ife's [brokerage] [a]ccount and other evidence showed that [the former] [w]ife adopted a "buy and hold" investment strategy.  The only [pre-dissolution] trades of the investment account were the four purchases of securities detailed above ….

…

… [T]he Court finds that <u>all enhancements</u> to [the former] [w]ife's $830,000 advance inheritance received from [her] mother … including interest and gains on the $830,000[,] is <u>a marital asset</u> to be divided equally between the parties.

The Court finds that the gifts were made to [the former] [w]ife as part of an early inheritance for the purpose of enhancing the investments and that the evidence shows that

5

*the investments were done as a joint marital venture and that both parties contributed to the enhancement of the $830,000 [which the former] [w]ife received from [her mother].*

*…*

*… [Thus,] the Court determines [the] $830,000 [principal in] the [brokerage account] represent[s] [the former] [w]ife's nonmarital assets[,] and the remaining $892,687.94 in the [brokerage account] shall be considered marital assets to be divided between the parties. These findings are reflected on the Court's alternative equitable distribution scenarios detailed herein below.*

(emphasis added; paragraph lettering omitted).

The circuit court's final judgment did not refer to section 61.075(6)(a)1.b., Florida Statutes (2020). The final judgment also did not address this court's and other district courts' cases interpreting what actions constitute "efforts of either party" which would cause a nonmarital asset's appreciation to be considered a marital asset under that statute.

### ***This Appeal***

This appeal followed. The former wife primarily argues the circuit court erred by equitably distributing the $892,687.94 appreciation on the former wife's advanced inheritance, because the former husband failed to prove by competent substantial evidence that either party had contributed the requisite "efforts" to have allowed the circuit court's determination that the advanced inheritance's appreciation was a marital asset. *See* § 61.075(6)(a)1.b., Fla. Stat. (2020) ("'Marital assets['] … include … [t]he enhancement in value and appreciation of nonmarital assets resulting from the *efforts of either party* during the marriage ….") (emphasis added).

The former husband summarizes his response as follows: "The parties invested the monies based on their marital efforts to educate themselves, and selected the investments based on marital efforts. Therefore, any appreciation would be a marital appreciation and would be subject to equitable distribution."

Our standard of review is mixed. *See Gromet v. Jensen*, 201 So. 3d 132, 135 (Fla. 3d DCA 2015) ("A trial court's determination that an asset is marital or nonmarital involves mixed questions of law and fact. Although [an appellate court] defer[s] to the trial court's factual findings if [those

6

findings] are supported by competent, substantial evidence, [an appellate court] review[s] the trial court's legal conclusions de novo.") (citations omitted).

Applying the foregoing mixed standard of review, we defer to the circuit court's factual findings that: the former wife's mother provided $830,000 as a gift to the former wife as part of an early inheritance for the purpose of enhancing that sum; the choice to invest that sum into four mutual funds was done as a joint marital venture; a buy-and-hold investment strategy was adopted such that the only pre-dissolution trades were the four purchases detailed above; and both parties "contributed"—the circuit court's chosen word—to the resulting appreciation of $892,687.94.

However, applying de novo review, we hold the circuit court erred in its concluding from those facts that the $892,687.94 appreciation was a marital asset to be divided equally between the parties. As stated above, the circuit court's final judgment did not address our and other district courts' precedent—some of which the former wife's counsel cited during closing arguments—interpreting what "efforts" are required for an enhancement in value and appreciation of a nonmarital asset to be deemed as a marital asset under section 61.075(6)(a)1.b., Florida Statutes (2020). Consideration of those cases guides our conclusion of why the $892,687.94 appreciation was, as a matter of law, a nonmarital asset.

Thus, we will summarize four cases applying prior mirror versions of section 61.075(6)(a)1.b. to the issue of whether enhancement of similar appreciable assets should be deemed marital or nonmarital. Three of these cases found an asset's enhancement to be nonmarital due to the lack of a party's efforts to enhance the asset's value. The fourth case found an asset's enhancement to be marital due to a party's efforts to enhance the asset's value. After summarizing those four cases, we will explain why this case's facts result in us concluding the $892,687.94 enhancement to the wife's nonmarital advanced inheritance was also a nonmarital asset.

A. *Oxley v. Oxley*

In *Oxley v. Oxley*, 695 So. 2d 364 (Fla. 4th DCA 1997), the husband's nonmarital assets included fifty percent of a corporation of which he was the president, and a trust. *Id.* at 365. During the parties' marriage, the trust appreciated by over five million dollars and the corporation's value appreciated by several million dollars. *Id.* A trustee managed the trust's assets, with investment guidance from the husband's father and brother. *Id.* However, on one occasion, the husband invested $400,000.00 of the trust's funds with a separate money manager. *Id.* The husband's

7

involvement in the corporation also was limited. While the husband was the corporation's "president," "his activities ha[d] been largely ministerial and ceremonial, leaving the management and investment decisions to others, although at one time he did briefly manage the business." *Id.* The circuit court ruled that the trust, the corporation, and the increased value of both were nonmarital assets. *Id.* at 367.

In affirming the circuit court's judgment, we agreed that the husband did not contribute marital "efforts" as that term was used in a prior version of section 61.075(6)(a)1.b. *Id.* As to the corporation, we concluded that although the husband had been the corporation's president, he had relied on business managers who had made decisions for him, and the increase in the corporation's value was due to market forces or the business managers, and not the husband. *Id.* We similarly concluded, "[w]ith regard to the increased value of the trust, it is clear that the increased value and income resulted from the business decisions and management of others. The husband's only active role was deciding to maintain the trust and trustee, and to permit the trustee to take his father's and brother's advice and to continue to manage the corpus, and retained income, for his benefit." *Id.*

B. *Doerr v. Doerr*

In *Doerr v. Doerr,* 751 So. 2d 154 (Fla. 2d DCA 2000), the husband inherited certain stock during the course of the marriage. *Id.* at 155. The stock was at all times held solely in the husband's name. *Id.* The stock had an initial value of $4,000, but during the course of the marriage, grew by passive appreciation and reinvestment of dividends to $35,000. *Id.* Upon the marriage's dissolution, the circuit court found the stock to be a marital asset and distributed one half of the stock's value to the wife. *Id.*

The Second District reversed, concluding, under a prior version of section 61.075(6)(a)1.b., the inherited stock was the husband's separate nonmarital asset when acquired and continued to be his nonmarital asset at the time of dissolution. *Id.* The Second District reasoned the stock remained at all times solely in the husband's name, and the wife, other than advising the husband to reinvest the dividends, did nothing to enhance the stock's value. *Id.*

C. *Steele v. Steele*

In *Steele v. Steele*, 945 So. 2d 601 (Fla. 4th DCA 2006), the circuit court was asked to determine whether the accumulated value of the former husband's pre-marriage 401(k) contributions was a nonmarital asset and

therefore not subject to equitable distribution. *Id.* at 602. During the marriage, the former husband's employer modified the 401(k) plan to provide its employees with the ability to monitor and control their investments. *Id.* The new plan also allowed employees to move assets among nineteen different mutual funds. *Id.* The former husband utilized this feature and, during the almost six-year marriage, made three such transfers, without withdrawing any funds. *Id.* At trial, the former wife argued the three transfers represented "marital effort" and therefore transformed the former husband's entire 401(k), including contributions made and value accumulated, into a marital asset. *Id.* The circuit court disagreed, finding the transfers were "extremely de minimis" in light of the relatively small amount which the former husband contributed to the plan during the marriage. *Id.* at 602-03.

Applying a prior version of section 61.075(6)(a)1.b., we affirmed, reasoning, "the husband in this case did not actively trade stocks or bonds. He only made three transfers during the six-year marriage, and these transfers had only a minimal impact on the value of his 401(k)." *Id.* at 603 (internal citation omitted).

D. *Chapman v. Chapman*

In contrast, in *Chapman v. Chapman,* 866 So. 2d 118 (Fla. 4th DCA 2004), a circuit court held that an increase in value of a husband's premarital securities resulted from the husband's efforts during the marriage, thereby making the increased value a marital asset under a prior version of section 61.075(6)(a)1.b. *Id.* at 118. On appeal, the husband claimed his efforts regarding the securities were limited to replacing investment grade bonds, as they became due, with similar bonds. *Id.* The husband therefore contended the enhancement in value was passive and should not be considered a marital asset under the statute. *Id.*

We affirmed, observing that the husband's claim had been contradicted by his brokerage account records, which revealed he had been actively trading stocks and bonds, enabling him to achieve a greater annual return than the benchmark for stocks. *Id.* We concluded, "[t]he evidence that the husband was actively trading stocks and bonds was sufficient to support the trial court's finding that enhancement resulted from his efforts during the marriage." *Id.* at 119.

E. *The Instant Case*

Applying the foregoing cases here, the former husband did not meet his burden to prove that either party's "efforts" resulted in enhancing the value and appreciation of the wife's $830,000 advanced inheritance. *See Palmer v. Palmer*, 316 So. 3d 411, 416 (Fla. 5th DCA 2021) ("The spouse asserting a claim that the appreciation in value of the other spouse's separate, nonmarital property is a marital asset bears the initial burden of proving that marital labor or funds were used to improve [the] assets.") (citation and internal quotation marks omitted).

While the circuit court found the research and selection of the mutual funds were done as a "joint marital venture" which had "contributed" to the $892,687.94 enhancement to the invested funds, we conclude such "contribution" was not sufficient to be deemed as "efforts of either party" under the prior interpretations and applications of section 61.075(6)(a)1.b.

Unlike *Chapman*, where the husband's brokerage account records revealed he had been "actively trading" stocks and bonds, enabling him to achieve a greater annual return than the benchmark for stocks and resulting in that enhancement being deemed marital, here it is undisputed that the $830,000 advanced inheritance was invested in the four mutual funds using a "buy-and-hold" strategy which the former husband typically had utilized and the former wife testified she had utilized, without active trading by either party during the marriage.

Instead, as in *Oxley*, where the increases in the values of the husband's corporation and trust were respectively due to "market forces or the business managers" and "the business decisions and management of others," here the increase in the $830,000 advanced inheritance's value was attributable to the persons who were managing the four mutual funds in which the advanced inheritance had been invested. Further, as in *Doerr*, where the stock grew in part by passive appreciation, here the value of the $830,000 invested in the four mutual funds also grew by passive appreciation. And lastly, as in *Steele*, where the former husband made three "de minimis" mutual fund transfers without withdrawing any funds, here the four mutual fund purchases also occurred without any withdrawal of those funds or other trading activity.

## Conclusion

Based on the foregoing, we conclude that while the circuit court correctly determined the wife's $830,000 advanced inheritance was the former wife's nonmarital asset, the circuit court erred in determining the

$892,687.94 appreciation from the advanced inheritance was a marital asset to be divided between the parties.

Thus, we reverse the final judgment's equitable distribution determination as to the $892,687.94 appreciation. We remand for the circuit court to enter an amended final judgment which determines that the $892,687.94 appreciation also shall be treated as the former wife's nonmarital asset. We further direct the circuit court to adjust the equitable distribution calculations in the amended final judgment accordingly. We do not reach the former wife's alternative argument for reversal, which we deem to be moot based on this opinion.

*Reversed and remanded with directions.*

WARNER and ARTAU, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***