# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1413

_____

GREGORY RAWSON, Former
Husband,

    Appellant,

    v.

LISA L. RAWSON, Former Wife,

    Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
David Rimmer, Judge.

February 4, 2019

JAY, J.

Gregory Rawson, the former husband, and Lisa L. Rawson, the former wife, appeal and cross-appeal, respectively, the trial court's Final Judgment of Dissolution of Marriage. Having carefully considered the unique and complicated facts of this case and the extensive arguments of the parties—as well as having given due deference to the trial court's exercise of its discretion toward the matters before it—we have concluded that all points raised by the former husband on appeal must be affirmed, but

three of the four points raised by the former wife on cross-appeal call for reversal. [1]

I

The parties had been married just over twenty-eight years when the former husband filed his Petition for Dissolution of Marriage and Other Relief on November 9, 2015. During those twenty-eight years, the parties moved frequently and purchased several parcels of property, some of which contained the family's homes and others of which were designated as rentals. This peripatetic lifestyle was due in large part to the former wife's having served, off and on for twenty years, as a commissioned officer in the United States Navy.

There were four children born of the marriage with only one minor child remaining at the time of the final hearing—a son, who turned eighteen on October 5, 2017. Over the years, as the family grew, the former wife was deployed to both domestic and foreign ports of call. For the most part, while based in the United States, the children remained with the former wife and were cared for by her retired parents. Often, the former husband followed along with his family, but, just as often, he did not—preferring to remain behind in the city where he was at the time employed.

Upon the former wife's retirement from the Navy, the parties moved to Gainesville, Florida, where the former wife took a job with the University of Florida working in Human Resources in the Department of Engineering. In addition, she worked at the recreation center as a swim instructor. However, she quit her job with the university and moved back to Memphis, Tennessee, where the parties owned property and a home, and took a position with a company as a business analyst, while the former husband stayed in Gainesville with the youngest child. From there, he worked remotely for his own Tennessee employer.

From that point forward, the parties changed employment frequently. In 2013, the entire family moved to Gulf Breeze,

---

[1] We affirm without further discussion Points II, III, and IV raised on appeal, and Point III raised on cross-appeal.

2

Florida. Not long after, the former husband moved back to Memphis and a new job, while the former wife remained in Gulf Breeze. For a time, the former wife also moved to Memphis to work for the University of Tennessee Medical Group ("UTMG"), where the former husband was doing "consulting" work, while the parties' youngest son remained in Florida with his grandfather. But, when UTMG began to downsize, both parties were laid off. The former wife returned to Gulf Breeze, while the former husband took up residence in their Arlington, Virginia condominium.

At the final hearing on the former husband's petition and the former wife's counter-petition, the trial court heard testimony from each party, as well as from their adult daughter, a certified public accountant, career and employment rehabilitation consultants, and a neuropsychologist who had examined the former wife. While the divorce proceedings were pending, the former husband was arrested for domestic violence/battery against the former wife. A domestic violence injunction against the former husband was still in effect at the time of the hearing.

The former wife testified that the former husband's threatening behavior against her began when he was served with her Petition for Dissolution of Marriage. She testified that he told her that she would lose everything and go into bankruptcy, while he would be "in Hawaii with his new lover." Additionally, he threatened that if she ever tried "to come after him for alimony or child support, he would kill [her] and make it look like a suicide because [she is] so crazy everyone would believe him." She also testified that the former husband had not paid child support or alimony since June 2015 and was paying only the mortgage on their house in Tennessee, while the former wife was paying for all the other properties.

When the former wife resigned her commission with the Navy in 2010, she did so with an 80% disability rating according to the Department of Veterans Affairs. Her financial affidavit reflected that at the time of the final hearing, she worked two days a week at the YMCA, earning $120 per month. In addition, she received a monthly disability check for $1900, as well as her Navy retirement pay of $3977. She was in debt to her father, who had loaned her $87,500 for the home in which she was then living, as well as an

3

additional $100,000 for her legal expenses. The former wife testified that she hoped to begin repaying her father $1000 per month when she was able. Her financial affidavit showed her monthly income was $5,165, while her monthly expenses totaled $11,670.

Much of the former wife's monthly expenses was attributable to the mortgage payments on properties she and the former husband owned during the marriage. They owned rental property in Sanford, Florida, and in Gulf Breeze. As noted earlier, besides the family home in Gulf Breeze, the parties owned the condominium in Arlington, Virginia, as well as a home in Lakeland, Tennessee. The parties stipulated to the values of those properties with the exception of what was also intended to be rental property for boarding horses, located on Brunswick Road in Arlington, Tennessee. The former wife had negotiated a twelve-month lease with an option for a second year on the latter property, with the lessees agreeing to make repairs and get the property back in shape, but the former husband blocked the deal on the day it was to be signed by sending out the police based on his accusation that the wife had no business being there, as it was a personal farm in his name only.

The former wife testified that once the divorce was final and her youngest child was out of high school, she would attempt to find a job in human resources that would accommodate her disabilities. As a long-term plan, she suggested she could also possibly put a house on the Brunswick Road property and run a horse boarding business—boarding and feeding the horses, and working with the owners—which she described as a fairly low-stress career and something she could do to support herself.

As for the former husband, on the day that he was first served with the former wife's initial petition for dissolution—which she later voluntarily dismissed—he took a full distribution from his 401(k) plan and drained the former wife's retirement account along with his own. He also cashed out their joint checking account for the sum of $3500. The 401(k) plan had $40,000 in it and was earmarked for their minor son's housing costs once he entered college.

4

An accountant testified that he had advised the parties to file a joint return for 2015, but the former husband filed a separate return claiming head-of-household status and the youngest child as a dependent. Unaware of this fact, the former wife did likewise—since the youngest child lived with her—which, according to the accountant, would more likely than not raise a red flag with the Internal Revenue Service. The 2015 tax returns were admitted into evidence. They revealed that the former husband claimed losses and took deductions that should have been shared equally between the two parties. In addition, the former husband took full advantage of an overpayment that resulted from their 2014 joint return by applying it to his own 2015 tax return. Significantly, the accountant testified that the present value of the wife's military pension was $728,645.

II

After the hearing, the trial court took on the sizable task of sifting through and scrutinizing the voluminous evidence. In its lengthy final judgment, after largely discrediting the former husband's testimony and weighing in the balance his dissipation of assets, the court crafted a division of the marital properties and other assets between the parties; considered each of the factors set forth in section 61.13(a)-(t), Florida Statutes, concerning parental responsibility and timesharing of the minor child—finding that most of the factors favored the former wife; and made equally detailed findings on the factors found in section 61.08(a)-(j), Florida Statutes, concerning an award of alimony. The trial court found that the former wife had presented "credible uncontested expert testimony" as to her lack of employability and as to the former husband's "earning capacity of $130,000." Ultimately, the court collated all of the values in its equitable distribution scheme and gave the former husband $787,956 in assets—which included a 45% share of the former wife's military pension—and, to the former wife, $783,883 in assets. Accordingly, it ordered the former husband to make an equalization payment of $4073 to the former wife.

Notwithstanding its division of assets, the trial court went on to fashion a lump sum alimony award to the former wife by giving her the former husband's 45% share of her military retirement

benefits and repurposing it as lump sum alimony. In doing so, the trial court reasoned:

> After the determination of the equitable distribution, the Court has determined that a judgment for alimony shall be made to the Wife. The Wife is entitled to permanent alimony from the husband. No other form of alimony is appropriate. After the Court takes 45% of the Wife's pension, the Court finds that the Wife has actual need for support of $7,294 per month. After the court credits the Husband for 45% if [sic] the pension, the court finds the Husband has the ability to pay support of $3,066 per month based upon an imputation of income and pursuant to the assets distributed to the Husband. Therefore, the Husband's ability to pay only cures a portion of the Wife's need. As permitted and specifically contemplated by Florida Statutes 61.075(10), the court finds that to do equity between the parties, the Wife should retain the Husband's 45% share of the military retirement as and for permanent alimony in a lump sum. The Court has significant concerns about the enforceability of its alimony award. Such lump sum will facilitate and effectuate the equitable provision of such.

As for child support, the trial court ordered that "[c]hild support shall be paid by the Husband to the Wife pursuant to the Child Support Guidelines based upon the imputation of income to the Husband." However, no amount of support was stated. No provision was made for retroactive child support, as prayed for by the former wife in her counter-petition.

Lastly, the trial court succinctly ordered that "[e]ach party shall be responsible for their own attorney fees and costs."

III

On the main appeal, we address only the former husband's argument that the trial court abused its discretion in awarding to the former wife the former husband's marital share of her military retirement as lump sum alimony.

6

While section 61.075(1), Florida Statutes, instructs the trial court to "begin with the premise that the distribution [of marital assets] should be equal," it goes on to qualify that goal by permitting an "unequal distribution" based on the relevant factors enumerated in paragraphs (a)-(j) of the statute, most relevant here being the one found in paragraph (j): "Any other factors necessary to do *equity and justice* between the parties." (Emphasis added.) In like manner, section 61.075(10), Florida Statutes, expressly states that the trial court, in order "[t]o do equity between the parties" and "in lieu of or to supplement, facilitate, or effectuate the equitable division of marital assets and liabilities, [may] order a monetary payment in a lump sum . . . ."

We review an award of lump sum alimony for an abuse of discretion. *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980). "Lump sum alimony for support requires a showing of need on the part of the recipient spouse, an ability to pay on the part of the payor spouse, and a justification for the payment." *Sellers v. Sellers*, 68 So. 3d 348, 351 (Fla. 1st DCA 2011) (citing *Jackson v. Jackson*, 507 So. 2d 1160, 1163 (Fla. 1st DCA 1987)).

> A "justification" is a "'good reason' or useful purpose which can sustain [an] award." *Rosen v. Rosen*, 386 So. 2d 1268, 1271 (Fla. 3d DCA 1980) (finding that "the subject matter of the award provide[d] its own justification" where the trial court awarded the wife the marital home as lump sum alimony and the parties had been living there for several years with their children); *see Rosario v. Rosario*, 945 So. 2d 629, 632 (Fla. 4th DCA 2006) ("[T]he trial court must find some special necessity for lump-sum payment of alimony" and, if support is needed, there must exist unusual circumstances which would require a non-modifiable award of support.").

*Id.* The trial court must make findings justifying such an award either on the record or in the final order. *Id.* A pension may be considered as a source of payment of permanent periodic alimony instead of being equitably divided. *Diffenderfer v. Diffenderfer*, 491 So. 2d 265, 267 (Fla. 1986).

Here, the former husband claims the trial court failed to make sufficient findings of both a "special necessity" and "unusual

circumstances" in awarding the wife his marital share of her military pension as lump sum alimony. He relies primarily on the decisions in *Rosario v. Rosario*, 945 So. 2d 629 (Fla. 4th DCA 2006), *Porzio v. Porzio*, 760 So. 2d 1075 (Fla. 5th DCA 2000), and *Glazner v. Glazner*, 693 So. 2d 650 (Fla. 5th DCA 1997), and cites to *Jessee v. Jessee*, 839 So. 2d 842 (Fla. 3d DCA 2003), for its holding that the finding of "special circumstances" must be something above and beyond the justifications for an award of permanent periodic alimony. *Id.* at 843. We find each of those decisions to be distinguishable.

In *Rosario*, the Fourth District reversed the award of the marital home to the wife as lump sum alimony not only because the trial court made no special findings as to why it was appropriate, other than to find that the fourteen-year marriage fell into the "gray area" for purposes of determining alimony, but also because the end result was that the lump sum award reduced the husband's net worth from $120,000 to $15,000, thereby "endangering his economic status." 945 So. 2d at 632. Here, the trial court made numerous "special findings" and did not significantly erode the former husband's equitable award or his economic status.

In *Porzio*, the award of lump sum alimony was reversed because the trial court failed to include any "special" findings to justify the award. In addition, the Fifth District's review was hampered by the lack of a trial transcript. 760 So. 2d at 1077. Again, in the present case, the court made significant findings and the record contained the complete hearing transcript. Our review of the instant judgment, therefore, was not hindered.

In *Glazner*, the award of lump sum alimony was reversed because the Fifth District found the wife was not entitled to either permanent periodic or rehabilitative alimony, and the award did not serve to equitably distribute a marital asset. 760 So. 2d at 652. No such conclusions can be made on the basis of the instant record in the face of evidence establishing that the former wife has an 80% disability rating and is limited in her ability to work.

Lastly, in *Jessee*, the Third District reversed the award to the wife of the marital home. It said, "The sole justification given for the award of the lump sum alimony was 'the Husband's intentional

attempt to avoid financial obligations by intentionally putting himself in a position to be terminated.'" 839 So. 2d at 843. But the Third District found that that particular fact had already been "taken into consideration in imputing income to the former husband and in awarding permanent periodic alimony to the former wife." *Id.* Accordingly, it ruled that "[i]t cannot additionally support the award of lump sum alimony . . . ." *Id.* We conclude there was no redundancy here in the trial court's findings of facts.

Rather, we are firmly of the view that the instant case presented its own unique equitable challenges to the trial court's exercise of its discretion. Therefore, we do not feel compelled by the above-cited decisions to apply their logic as authority for reversal. Here, the trial court did impute income to the husband, which, as in *Jessee*, reflected the court's conclusion that the former husband was intentionally avoiding employment. But, the trial court also found that the former husband's dissipation of the parties' assets and his withholding of the rental income from the former wife—as well as his threat that he would rather kill the former wife than support her—underscored the court's "significant concerns about the enforceability of its alimony award." Those findings were sufficient to show both a "special necessity" and "unusual circumstances" to support awarding the former wife the husband's marital share of her military pension as lump sum alimony. Furthermore, the former wife was left with significant property expenses as a result of the final judgment.

This case exemplifies an instance when the trial court rightly concluded that "equal" would not be equitable, and it commendably performed its equitable functions while not abandoning its legal responsibilities under chapter 61.[2] Based on these considerations, we hold the trial court did not abuse its discretion in ordering that the wife retain the husband's 45% interest in her military pension as permanent lump sum alimony. *See Goodman v. Goodman*, 666 So. 2d 262, 263 (Fla. 4th DCA 1996) (considering the disabled

---

[2] *Cf. Horne v. Horne*, 711 So. 2d 1310, 1313 (Fla. 1st DCA 1998) (Wolf, J., dissenting) (observing that neither the language of chapter 61 nor the dictates of our supreme court mandate the distribution of assets "be 'equal' rather than 'equitable'").

husband's early retirement pension as a source of payment of permanent periodic alimony, rather than subject to equitable division, and awarding the pension to the husband as lump-sum alimony, was not an abuse of discretion on the trial court's part; the wife was relieved of the obligation of supporting the former husband from long-term marriage).

IV

We turn now to the points raised by the former wife in her cross-appeal of the final judgment. As her first point, the former wife argues that the trial court, in awarding child support, erred as a matter of law in failing to set a monthly support amount. The former husband correctly concedes error on this point, as the award is mandatory. Accordingly, on remand, the trial court is ordered to calculate the amount of child support according to the child support guidelines as set forth in section 61.30, Florida Statutes.

In her second point on cross-appeal, the former wife claims the trial court abused its discretion in failing to award retroactive child support pursuant to section 61.30(17), Florida Statutes. Again, the former husband appropriately concedes error. Although the parties dispute the date from which the retroactive support should begin—the former wife claims it should start from the date of separation in June 2015, while the former husband argues the correct date is November 9, 2015, the date of filing of the petition for dissolution of marriage—it has been held that "[a] trial court abuses its discretion when it fails to award retroactive child support from the date of the filing of a petition for dissolution of marriage where there is a need for child support and an ability to pay." *Leventhal v. Leventhal*, 885 So. 2d 919, 920 (Fla. 3d DCA 2004). Accordingly, on remand the trial court is directed to award retroactive child support from the date of filing.

The last point we consider is the former wife's fourth point on cross-appeal, in which she asserts the trial court erred in denying her request for the former husband to pay her attorney's fees. Without making any findings as to the former wife's need for fees and the former husband's ability to pay them, the trial court ruled only that both parties were responsible for their own attorney's

fees.[3] In simply denying fees without further explanation, the trial court erred. Section 61.16(1), Florida Statutes, states in pertinent part that the trial court "may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees . . . ." But here, the trial court's ruling leaves us guessing as to whether it followed the statute, and, thus, denies us the ability to review the correctness of its decision. In *Rosen v. Rosen*, 696 So. 2d 697 (Fla. 1997), the Florida Supreme Court found "that section 61.16 governs the standard to be applied in determining an award of attorney's fees in dissolution of marriage, support, and child custody cases." *Id.* at 701. To that end, it determined that under the "scheme" of section 61.16,

> the financial resources of the parties are the primary factor to be considered. However, other relevant circumstances to be considered include factors such as the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation.

*Id.* at 700. Inherent in weighing these equitable factors is the necessity for the trial court to make express findings. *Nassirou v. Borba*, 236 So. 3d 1180, 1181-82 (Fla. 1st DCA 2018) (citing *Sumlar v. Sumlar*, 827 So. 2d 1079, 1084 (Fla. 1st DCA 2002)); *see also Powers v. Powers*, 193 So. 3d 1047, 1048 (Fla. 2d DCA 2016) ("A circuit court cannot deny attorneys' fees and costs under section 61.16 without making any findings as to the parties' relative financial needs and abilities.") Accordingly, we reverse this point and remand for the trial court to reconsider the former wife's motion for attorney's fees under the guidance of *Rosen*, and to make appropriate findings before making its ruling.

---

[3] This point, as were all her points, was preserved for appeal by virtue of the same arguments having been raised in the former wife's motion for rehearing.

11

V

For all of the reasons expressed, the Final Judgment of Dissolution of Marriage is affirmed in part, reversed, in part, and remanded for further proceedings consistent with this opinion.

AFFIRMED, in part, REVERSED, in part, and REMANDED with instructions.

WOLF and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Ross A. Keene of Ross Keene Law, P.A., Pensacola, for Appellant.

William S. Graessle and Jonathan Graessle of William S. Graessle, P.A., Jacksonville, for Appellee.