704 So.2d 1095 (1997)
Barbara CATALFUMO, Appellant/Cross-Appellee,
v.
Daniel S. CATALFUMO, Appellee/Cross-Appellant.
Nos. 96-0259, 96-0337.
District Court of Appeal of Florida, Fourth District.
December 31, 1997.
Rehearing and Rehearing Denied February 20, 1998.
*1096 Brenda M. Abrams of Abrams, Abrams & Etter, P.A., Miami, and Lewis Kapner, P.A., West Palm Beach, for appellant/cross-appellee.
Joel M. Weissman and Stephanie A. Russo of Weissman, Manoff & Yaffa, P.A., West Palm Beach, for appellee/cross-appellant.
Rehearing and Rehearing En Banc Denied February 20, 1998.
DELL, Judge.
These consolidated appeals follow a final judgment of dissolution of marriage. In case number 96-0337, Barbara Catalfumo contends that the trial court abused its discretion when it determined the date of filing the petition for dissolution as the valuation date for equitable distribution, denied prejudgment interest, denied permanent periodic alimony, and awarded an inadequate amount of child support and attorney's fees. In case number 96-0259, Daniel Catalfumo contends that the trial court erred when it granted Mrs. Catalfumo's motion for rehearing and amended the final judgment to include, among other things, her entitlement to the residence and $1,735.00, the cash value of a life insurance policy. Mr. Catalfumo has failed to demonstrate reversible error in case number 96-0259.
In case number 96-0337, we affirm the valuation date for equitable distribution purposes, the amount of child support awarded, the denial of alimony, and the amount of attorney's fees awarded. We reverse the denial of prejudgment interest and remand with directions to award Mrs. Catalfumo prejudgment interest on the equitable distribution award of $1,120,672.00, commencing on the date of filing the petition for dissolution of marriage.
The parties married on March 26, 1977. Neither party brought any significant assets into the marriage. Mrs. Catalfumo quit school to work part-time in a business with Mr. Catalfumo. She also worked part-time as a dental assistant. During the course of the marriage, Mr. and Mrs. Catalfumo operated various businesses. Eventually, they became involved in a building and construction business and used their home as an office and as a showcase for prospective buyers or builders.
In 1982, with the birth of their first child, Mrs. Catalfumo stopped working as a dental assistant. In 1986, after the birth of their second child, Mr. Catalfumo told her that he needed "more space." That same year, the parties separated and divided their assets. Thereafter, Mrs. Catalfumo operated a shoe store that was liquidated for no significant gain. Mr. Catalfumo continued to operate a number of businesses. The parties did not divide nor determine the value of the businesses operated by him. From April, 1986, *1097 until the present, Mrs. Catalfumo has not had any direct involvement in Mr. Catalfumo's business ventures. In 1987, Mrs. Catalfumo filed for dissolution of marriage.
The dissolution proceedings lasted more than seven years. During that period, Mrs. Catalfumo attended nursing school, and in 1993, she began working as a nurse. After the parties separated, Mr. Catalfumo prospered in the construction business. The properties he developed and the businesses he operated accumulated a total value far in excess of the value of those in existence at the time the petition was filed. The record contains testimony that at the time of the final hearing, the estimated net value of the businesses operated by Mr. Catalfumo was approximately $22,000,000.00.
Throughout the seven year separation, Mr. Catalfumo paid Mrs. Catalfumo $1,500.00 $1,600.00 per month to support the children, and a larger amount while she attended school. He paid for the children's private school tuition, books, uniforms, summer camps, vacations, and medical insurance. He also purchased at least one life insurance policy for Mrs. Catalfumo and the children in the amount of $1,000,000.00.
On October 5, 1994, in addition to attorney's fees already paid by Mr. Catalfumo on behalf of Mrs. Catalfumo, the trial court granted Mrs. Catalfumo's motion for temporary relief and ordered Mr. Catalfumo to pay $50,000.00 in attorneys' fees and $5,000.00 in accountant's fees. The court stated that it intended this award to be sufficient to pay the amounts owed and to take the case through trial.
In June, 1994, Judge Wennet granted Mr. Catalfumo's motion to set the date of filing as the valuation date for equitable distribution. His order provided that the parties could present further argument on this question. On October 24-27, and December 5,1994, the trial court conducted hearings on the equitable distribution, prejudgment interest, child support, and other disputed financial issues. Consistent with Judge Wennet's previous order, Judge Gross heard additional testimony and argument concerning the valuation date.
Mrs. Catalfumo argued that because the parties were still married at the time of the hearings, it was unfair to ignore the appreciation in value of Mr. Catalfumo's businesses during the period between filing and trial. Mrs. Catalfumo reasoned that she helped increase the properties' values by caring for the children and allowing Mr. Catalfumo to use her share of the marital estate to finance his business ventures. Mr. Catalfumo argued that the valuation date for equitable distribution should be closer to the time of filing for dissolution. He asserted that the court should look at properties in existence at the time of filing and value them as of that date. He did not dispute, however, that if a specific asset was directly related to a subsequently developed property, it should then be included as a marital asset.
The court reaffirmed 1987 as the valuation date for equitable distribution of the parties' assets and further determined that in 1987, the corporations in which Mr. Catalfumo had an interest were valued at $2,303,302.00. The court made provisions in its order for consideration of proposals by either party to determine the value and the equitable distribution of assets not covered in the order. The court also found that for purposes of awarding child support, Mr. Catalfumo's net monthly income was $20,634.00.
During October, 1995, the trial court conducted a final hearing and thereafter issued its final judgment. The court awarded primary residential custody to Mrs. Catalfumo and ordered Mr. Catalfumo to pay $2,914.00 per month in child support, bear all expenses reasonably related to the children's schooling, and keep a life insurance policy with each child as an irrevocable beneficiary. The court also stated, "As and for equitable distribution, the Husband shall pay to the Wife in complete satisfaction of all her claims the sum of $1,120,672." The court denied Mrs. Catalfumo's claim for alimony, but granted her application for post-judgment attorney's fees and costs and ordered Mr. Catalfumo to pay $18,112.50 to her attorneys for the period between the equitable distribution order and the final judgment.
Mrs. Catalfumo contends that the trial court abused its discretion when it used the *1098 date of filing the petition for dissolution, rather than the date of trial, as the valuation date for equitable distribution. Section 61.075(6), Florida Statutes (Supp.1988), requires the valuation date to be the date of filing the petition "unless the trial judge determines that another date is just and equitable under the circumstances." However, this case was filed prior to the effective date of that section. The proper valuation date under case law preceding the enactment of section 61.075 is "either the petition filing date or the hearing date in cases where the value of the parties' property had significantly increased in value between the filing and trial dates, unless the trial court found sufficient justification for using some other date." Nicewonder v. Nicewonder, 602 So.2d 1354, 1357 (Fla. 1st DCA 1992).
Mrs. Catalfumo relies on Perlmutter v. Perlmutter, 523 So.2d 594 (Fla. 4th DCA 1987), rev. denied, 531 So.2d 1354 (Fla.1988), to support her argument that the trial date is the appropriate date to value marital assets when a lengthy amount of time has elapsed between filing the petition and the date of trial. In Perlmutter, this court aligned itself with conclusions reached in Wegman v. Wegman, 123 A.D.2d 220, 509 N.Y.S.2d 342 (1986). In Wegman, the court stated:
In many cases valuation of marital assets as of a date as close to the time of trial as practicable will result in an award which is fair to both parties. As has heretofore been pointed out, there frequently may be a substantial lapse of time between the date of commencement of the action and the date of trial.... Under such circumstances, the valuation of assets close to the time of trial may result in the formulation of an award consistent with the purpose of equitable distribution and insure that each spouse receives a fair share of the family assets accumulated while the marital relationship endured.
However, in other cases circumstances may exist which would justify the use of a valuation date closer to the time of commencement of the action. As we have already mentioned, a sharp increase in the value of a marital asset due solely to the efforts of the owner spouse might be such a circumstance. Similarly, a dramatic reduction in value due to dissipation or wasteful conduct of the owner spouse might justify the use of a date earlier than the date of trial. These examples, of course, are not exclusive. Furthermore, recognition may be given to the principal which is the basis of the Equitable Distribution Law, namely, that the concept of "economic partnership" rests upon the existence of an underlying and continuing marital relationship.
In the last analysis, the date chosen must be tailored to the particular facts involved in each case and must be reflective of the legislative mandate to provide for the equitable distribution of the assets of the martial partnership.
Id. at 595-96 (citations omitted).
The panel in Perlmutter concluded that the trial date was the appropriate date to value assets for equitable distribution. 523 So.2d at 596. However, the Perlmutter opinion does not disclose who or what caused the increase in the value of the assets. Id. The record in this case shows that the increase in the value of Mr. Catalfumo's businesses resulted from his individual efforts after the parties separated and after the filing of the petition for dissolution.
In Temple v. Temple, 519 So.2d 1054 (Fla. 4th DCA 1988), the parties were separated for at least four years prior to filing the petition for dissolution. The trial court selected the date the petition for dissolution of marriage was filed, rather than the date of separation, as the date for determining the marital assets. Id. This court affirmed:
After the couple's separation, but before filing for divorce, the husband acquired a substantial amount of company stock by participating in a corporate buyout, primarily using borrowed funds as well as sums earned after the separation. Although this stock was acquired prior to filing, it was not evenly divided in the equitable distribution allocation.... [I]t is clear that the husband received substantially more than the wife as a result of the unequal distribution of the stock acquired during the separation.... [I]t is not an abuse of discretion for the trial court to *1099 consider factors such as a lengthy period of separation for disparate treatment. Here, the stock would not have been a marital asset had either party filed for dissolution within a year or two of their separation. The time of the acquisition following separation is a factor that the trial court may reasonably take into consideration.
Id. at 1054-55 (citations omitted).
In Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA 1986), rev. denied, 494 So.2d 1149 (Fla.1986), the parties were married for thirteen years, but only lived together for nine. The wife quit her job as a nurse to assist in her husband's business. Although she did not make extraordinary contributions to his business, she was there to help out when he needed her. Id. at 1266. About one year after they married, the husband purchased two parcels of real estate. Id. During the course of the marriage, these parcels appreciated in value by about $467,000.00. Id. This court held that the trial court abused its discretion by declining to subject that real estate to equitable distribution and stated that in fashioning an equitable distribution scheme, "courts may consider the role each party played in the accumulation of those assets." Id. at 1267. In Buttner, the accumulation of assets occurred during the course of the marriage, and this court concluded that the wife contributed to the appreciation of the assets.
Mrs. Catalfumo does not argue that she directly participated in the development of Mr. Catalfumo's businesses or that the properties were acquired before separation and the filing of the petition for dissolution. She argues that because Mr. Catalfumo's businesses were not divided at the time of separation, that he had the benefit of her share of the assets in developing his business ventures. However, Mrs. Catalfumo did not trace her interest in Mr. Catalfumo's assets as they existed in 1986 to his current interests. Even though Mr. Catalfumo's properties are now worth a substantially greater amount than when the parties married, the record shows that the acquisition of the properties and their increase in value occurred after the parties separated and after Mrs. Catalfumo filed her petition for dissolution. Based on the record before us, we hold that the trial court did not abuse its discretion in finding the date of filing the petition for dissolution as the valuation date for equitable distribution. See Temple, 519 So.2d at 1054.
However, the trial court did abuse its discretion when it failed to award prejudgment interest on the equitable distribution award. The purpose of requiring payment of prejudgment interest is "to insure that equity be done between the parties." Cotton v. Cotton, 439 So.2d 309, 310 (Fla. 2d DCA 1983), rev. denied, 447 So.2d 886 (Fla.1984). In Cotton, the court provided the husband with an option to either pay alimony in a lump sum or over a period of time. Id. If he chose to pay it over a period of time, the court stated that the wife "should be compensated for the delay in receiving her alimony. The imposition of interest was one factor which the trial court could and did consider as necessary to do equity and justice between the parties." Id. at 310-11. The court awarded prejudgment interest for the periodic payment and stated that requiring the payment of interest is within the sound discretion of the trial court. Id. at 310.
The record supports the trial court's remarks concerning the economic benefit Mr. Catalfumo received by evaluating the marital estate in 1987, but delaying the payment of Mrs. Catalfumo's share until eight years later. The court stated, "My intention is to determine what the equitable distribution is in 1987, and then I am going to be using a 12 percent interest rate, period.... That is what the legal rate was from that point in time." The court also stated, "If I go to '87 I have to take into account the wife has been a silent partner for seven years."
However, the trial court ultimately concluded:
No case cited by the wife allows for the assessment of interest prior to the entry of final judgment, the event which triggers her entitlement to a certain amount of assets. The cases requiring the assessment of prejudgment interest generally involve the occurrence of a wrongsuch as a breach of contract or a tortwhich causes a loss at a time certain in the past.
*1100 We agree with the reasoning expressed in Morris v. Morris, 724 P.2d 527 (Alaska 1986), that awarding prejudgment interest "is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money." Id. at 529; see also Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985). The record supports the trial court's finding that Mr. Catalfumo had the benefit and use of Mrs. Catalfumo's share of the assets for more than seven years. Under the facts of this case and the findings of the trial court, it would be inequitable for Mrs. Catalfumo to be denied prejudgment interest. We therefore hold that the trial court abused its discretion when it failed to award prejudgment interest from the date of filing of the petition for dissolution.
Mrs. Catalfumo also argues that the trial court erred because it did not explain how it determined Mr. Catalfumo's net income in calculating the child support award. The record contains sufficient evidence demonstrating how the court made its determination. Also, the trial court did not abuse its discretion when it did not consider Mr. Catalfumo's capital gains in the child support calculations because the record does not establish whether the gains were recurring or non-recurring. See § 61.30(a)(14) Fla. Stat.(1987). We also hold that the trial court did not abuse its discretion in the amount of attorney's fees awarded to Mrs. Catalfumo nor in its denial of permanent periodic alimony.
Accordingly, we affirm the valuation date set by the trial court, the amount of child support awarded, the denial of alimony, and amount of attorney's fees awarded. We reverse the denial of prejudgment interest and remand with instructions to award appellant prejudgment interest on the equitable distribution award of $1,120,672.00, commencing on the date of filing the petition for dissolution.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
STEVENSON, J., and COSTELLO, DEEDE S., Associate Judge, concur.