DAMOORGIAN, J.
William Mathers (the husband) appeals the trial court’s Final Judgment of Dissolution of Marriage between himself and Nancy Brown (the wife). We affirm.
The relevant facts are as follows. The parties met in 2001 at the husband’s college reunion. At the time, the husband was fifty-seven. The wife initially told the husband that she was forty-six, but later told him she was thirty-nine. The husband was excited to learn that she was only thirty-nine because he wanted to have children. After living with each other for a period of time, the parties decided to wed. One of the husband’s main reasons *836 for marrying the wife was so they could start a family.
In January of 2008, the parties married. On the marriage application, the wife stated that she was born in 1961 and was forty-one. Unfortunately, the marriage failed and the parties separated less than four years later in November of 2006. In January of 2007, the husband learned for the first time that the wife was born in 1951, rather than 1961, making her forty-nine when they met, not thirty-nine.
A few months later, on March 13, 2007, a petition for dissolution of marriage was filed. The only issue before the trial court was the distribution of the parties’ assets, with the main dispute centering on the marital versus nonmarital status of the appreciation in the husband’s stock portfolio. While the parties essentially agreed as to the value of the husband’s portfolio at the start of the marriage and at separation, they disagreed as to the appropriate method for calculating the marital appreciation.
During a hearing on the petition for dissolution, the wife argued that the entire appreciation of the husband’s portfolio was a marital asset, while the husband argued that only the active appreciation was a marital asset. To determine the passive appreciation, the husband argued that the Standard & Poor’s 500 Index should be used as a benchmark.
At the close of the hearing, the trial court made initial findings that it would accept the date for valuation as the date of filing the petition. It then adopted the husband’s starting and ending valuation of the stock portfolio as $4,371,702 and $7,993,088, respectively. The trial court then excluded $788,569 from the portfolio as nonmarital, consisting of the husband’s $425,000 boat sale, $38,804 life insurance proceeds, $121,399 inheritance, $200,330 partnership income, and $3,036 certificates of deposit. The court did not rule on the $2,832,817 appreciated value in the husband’s portfolio until it announced its oral rulings on February 15, 2008. At that time, the court concluded that the entire increase in the husband’s portfolio was marital because he personally traded his portfolio.
On March 18, 2008, the trial court entered its final judgment of dissolution. The court found that the wife lied to the husband about her age, her assets, and her interest in having childi’en and her ability to do so. Because the husband believed these lies, he married the wife and did not insist upon a prenuptial agreement. The court noted that because the wife had withdrawn her alimony and attorney’s fees claims, the only issues to be resolved concerned equitable distribution, and the main dispute was the marital appreciation of the husband’s nonmarital stock accounts.
The trial court stated that the definition of marital assets in section 61.075(5)(a), Florida Statutes (2007), includes the enhancement of value of nonmarital assets resulting from the efforts of either party during the marriage. The trial court then explained that the burden is on “the spouse who wishes to show that an increase in the value of assets during the marriage is nonmarital property.” For such appreciation to be passive and, therefore, nonmarital, the increase in value must be “purely the result of time and market conditions.”
After recognizing that the husband conceded his active efforts contributed to the appreciation in his portfolio, the court rejected the husband’s argument that, under Chapman v. Chapman, 866 So.2d 118 (Fla. 4th DCA 2004), “the increase in value should be offset by an amount equal to the increase that stocks on the Standard & *837 Poor’s 500 Index sustained over the period of the marriage.” The court reasoned,
The major problem with the Husband’s argument is that he did not, in fact, invest in a manner consistent with the S & P 500 Stock Index, inasmuch as he bought and sold only a few S & P 500 stocks after the initial sell-off of his managed nonmarital assets. Instead, he bought and sold many foreign stocks and foreign index funds throughout the world. He was also involved heavily in commodities and currency training. The Husband made over 700 separate trades during the marital time frame. The S & P 500 Stock Index assumes a buy/hold strategy where stocks are purchased, not sold, and are held for a long period of time. As a result, the Court finds that any index, whether it be the suggested S & P 500 Stock Index, or any other one available for analysis during the term of the parties’ marriage, would be entirely speculative. The Husband has also presented insufficient evidence that any increase in the value of his investments was purely the result .of time and market conditions. In light of the foregoing, the Court will not apportion and offset the growth from the Husband’s stock account by any index factor and, as a result, all of said $2,832,817.00 is a marital asset.
The trial court found justification for an unequal distribution of the marital value of the husband’s stock account based on: (1) the economic windfall to the wife that resulted solely from her having an outside management company trade her portfolio, while the husband personally traded his; (2) the lack of any showing that the parties intended the growth in their stock accounts to be treated differently; (3) the short duration of the marriage; (4) the acknowledged fact that the husband’s account would have passively grown hundreds of thousands of dollars in value, even if left as it was at the time of the marriage; (5) the possibility that the husband would have required a prenuptial agreement if the wife had not lied about her age and net worth; and (6) the fact that the husband’s accounts had supported the parties during the marriage, allowing the wife’s nonmari-tal account to grow without deduction. The court concluded that “it would be unjust and contrary to the concepts of equity to equally distribute the marital portion of the husband’s account, but keep the entire growth of the wife’s account during the marriage as a nonmarital asset.” The court ordered an unequal distribution of the marital growth of the husband’s brokerage account: $1,832,817 to the husband and $1,000,000 to the wife.
The court then awarded “prejudgment interest on [the wife’s] equitable distribution payment of $1,000,000 from the date of filing to the date of this judgment at the statutory rate of 11 percent. Further, that sum shall accrue at the rate of 11 percent until paid to [the wife] in full.”
On appeal, the husband contends that the trial court erred when it declined to apportion his portfolio’s appreciation among passive and active factors, as mandated by this Court in Chapman. The wife responds that the trial court correctly declined to apportion the appreciation because the husband invested in a manner inconsistent with the S & P 500 Index and presented no evidence of any other passive appreciation index. Any apportionment, therefore, would have been based purely on speculation.
While the standard for reviewing a trial court’s equitable distribution is generally abuse of discretion, Kovalchick v. Kovalchick, 841 So.2d 669, 670 (Fla. 4th DCA 2003), the trial court’s determination is reviewed de novo when the issue on appeal, as here, concerns a pure issue of law. *838 Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003) (citation omitted).
Section 61.075(5)(a)(2), Florida Statutes (2007), defines a marital asset as “[t]he enhancement in value and appreciation of nonmarital assets resulting ... from the efforts of either party during the marriage.” Both parties in this case agree that the husband actively managed his stock portfolio and thus, the appreciation is at least in part a marital asset. The point of contention, however, concerns how much of this appreciation is a marital asset and how much is a nonmarital asset. Because the trial court determined that the entire amount of appreciation was a marital asset, the issue on appeal is whether the trial court erred in reaching such decision.
The basis for the trial court’s decision was that the husband failed to meet his burden in establishing that any portion of the increase in his portfolio was due to passive market conditions. See O’Neill v. O’Neill, 868 So.2d 3, 5 (Fla. 4th DCA 2004) (“[0]nce it is established that marital labor was used, the burden falls to the party claiming that the increase is nonmarital to establish whether any part of the increase was the result of passive market conditions and, thus, is exempt from equitable distribution.”); see § 61.075(7), Fla. Stat. (2007). We agree with the trial court that the husband failed to meet his burden. Although the husband argued that the S & P 500 Index should be used as a benchmark, he never presented any evidence explaining why this was an appropriate benchmark to determine the increase in the husband’s account due to passive market conditions. Rather, his accountant testified as to why that index would be proper to evaluate the husband’s overall investment performance, stating that the S & P 500 Index was a “very important benchmark” used by financial planners and brokerage houses “to measure individual portfolios as to performance.” Because of its widespread acceptability in both legal and financial arenas, she testified that it was “the most appropriate index under the circumstances.”
After hearing testimony from the accountant, the trial court voiced its concern regarding whether the S & P 500 Index “fairly reflect[ed] the growth of the husband’s portfolio,” which contained many foreign stocks. In response, the husband’s attorney cited Chapman for the proposition that the S & P 500 Index is always the benchmark for a stock portfolio. Although we approved the testimony of an expert who used the S & P 500 Index in that case to measure passive appreciation of a stock portfolio, we did not declare that the index was appropriate to evaluate passive appreciation in every stock portfolio. 866 So.2d at 118-19. On the contrary, the burden falls on the party claiming that the increase is nonmarital to establish by competent evidence why a particular index is appropriate to measure passive appreciation. O’Neill, 868 So.2d at 5. Because there was no testimony supporting the use of the S & P 500 Index in this case, the trial court did not err in refusing to rely on the index.
We also disagree with the husband’s contention that the trial court erred in awarding the wife prejudgment interest on her equitable distribution payment. The decision to award prejudgment interest is within the trial court’s discretion and will not be disturbed absent an abuse of such discretion. See Catalfumo v. Catalfumo, 704 So.2d 1095, 1100 (Fla. 4th DCA 1997) (citing Morris v. Morris, 724 P.2d 527 (Alaska 1986)). In exercising its discretion, a trial court should consider factors such as “the length of the separation, the time between the equitable divorce date and the final judgment, the amount of *839 potential interest, whether the marital property itself earned interest during the separation, whether there was undue delay in bringing about the final judgment, and anything else it deems important.” Morris, 724 P.2d at 530 n. 10.
Taking into account the criteria set forth in Morris, we conclude that the trial court did not abuse its discretion in awarding prejudgment interest from the date the petition was filed. The trial court was entitled to compensate the wife from the time that she was entitled to but did not have access to the money. Catalfumo, 704 So.2d at 1100 (citing Morris, 724 P.2d at 529). As we explained in Catalfumo, “awarding prejudgment interest ‘is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he was entitled to it and the date of judgment.’” Id. (citing Morris, 724 P.2d at 530). A corollary purpose is to “eliminate the incentives to litigate a case or prolong judgment.” Morris, 724 P.2d at 529. We caution, however, that “[a] party in a divorce proceeding is not ‘entitled’ to such interest in every case, because the trial court must have broad discretion to determine the most equitable distribution of marital property under the particular circumstances.” Id.
Accordingly, we affirm the trial court’s order in all respects.
GERBER, J., concurs.
GROSS, C.J., concurs specially with opinion.