# Third District Court of Appeal

## State of Florida

Opinion filed February 7, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-757
Lower Tribunal No. 18-166
_____


**Mishelle Addys Perdomo Vindel,**
Appellant,

vs.

**Scott Aron Stewart,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Maria Elena Verde, Judge.

Lisa A. Baird, P.A., and Lisa A. Baird, for appellant.

Sandy T. Fox, P.A., and Sandy T. Fox, for appellee.


Before EMAS, MILLER and BOKOR, JJ.

EMAS, J.

## **INTRODUCTION**

Mishelle Addys Perdomo, the Former Wife, appeals the trial court's final judgment, contending the trial court erred in (1) permitting the introduction of Honduran bank account records because they were not properly authenticated by the bank's records custodian; (2) relying on such bank records to conclude that the funds in those accounts constituted marital assets subject to equitable distribution; (3) denying the Former Wife's request for prejudgment interest on the equitable distribution of funds owed to the Former Wife from the date of filing in 2018 to the date the funds were actually paid in 2021 and 2022; and (4) denying the Former Wife's request for attorney's fees and costs without making findings regarding the parties' need and ability to pay.

Because the trial court erred in admitting the Honduran bank account records into evidence without proper authentication, and in relying upon those records in making its equitable distribution determinations, we reverse. We further reverse the trial court's denial of prejudgment interest, given the stated basis for that denial, and, finally, we hold the trial court erred in denying attorney's fees and costs to the Former Wife without making the requisite findings under section 61.16, Florida Statutes (2021). We remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

Mishelle Addys Perdomo (Former Wife) and Scott Aron Stewart (Former Husband) were married in 2012. They had no children. The Former Husband filed for dissolution of marriage in January 2018 and the parties were divorced by a bifurcated final judgment in September 2018. That judgment dissolved the marriage, awarded the Former Wife an advance equitable distribution of $47,500, and retained jurisdiction over all remaining financial issues, including equitable distribution, alimony, attorney's fees, and costs.

In 2021, the case proceeded to trial on the issue of equitable distribution. One of the central questions was whether the Former Wife hid marital assets in Banco Ficohsa Honduras, a bank located in Honduras. Banco Ficohsa Honduras has an International Representative Office in Coral Gables.

Significant to the action below (and on appeal) was whether that local office could serve as a proper custodian for account records located in Honduras. In January 2020, the Former Husband served a subpoena duces tecum on the International Representative's Office in Coral Gables, seeking to obtain bank records for the Honduran bank accounts in the name of the Former Wife and the Former Wife's sister, Evelyn Perdomo.

Within a month, the general manager of the local office replied that the Coral Gables office was "an international representative office serving as liaison" between Banco Ficohsa Honduras and its customers in the United States; and that it submitted the Former Husband's request to the "Head Office in Honduras" which confirmed that the Former Wife and her sister do hold personal bank accounts with Banco Ficohsa Honduras. Attached to that reply was what purported to be the subject bank records, the local office indicating that these were "authentic copies of both Ms. Mishelle's and Ms. Evelyn's accounts . . . ."

**Equitable Distribution of the Former Husband's Marital Assets**

The trial commenced on February 1, 2021. The day before trial, the Former Husband filed 35 exhibits generally associated with the Former Wife's bank records from Banco Ficohsa Honduras. The Former Wife moved to strike all exhibits provided and witnesses listed because they violated the pretrial order and applicable rules. On the first day of trial, the trial court heard argument on the Former Wife's motion to strike, and generally agreed with the Former Wife regarding the Former Husband's last-minute attempt to introduce and rely upon the bank records.

Following a break to discuss the matter, the parties agreed to defer to a future date that portion of the case relating to the Former Wife's Honduran

4

bank records and the funds in those accounts, and to proceed with trial on the remaining issues relating to the Former Husband's purported marital assets. Upon conclusion of that portion of the trial, the trial court ordered the Former Husband to disburse the Former Wife's share of cash and funds in an Ameriprise investment account, but to withhold the remaining assets of $102,865 (held in a Capital One account) pending the outcome of the still-pending equitable distribution of the Former Wife's alleged Honduran bank accounts, which purported to total approximately $100,000. The trial court further reserved ruling on the Former Wife's entitlement to prejudgment interest.

**Equitable Distribution of Funds in the Former Wife's Honduran Bank Accounts**

The trial court reset the remaining portion of the trial (on equitable distribution of funds in the Former Wife's Honduran bank accounts) to commence four months later, on June 7, 2021. A month before that trial date, the Former Husband issued a trial subpoena duces tecum to the International Representative Office located in Coral Gables, in an attempt to secure the appearance at trial of the "records custodian" to authenticate the previously obtained bank records. The Former Husband also filed an addendum to his pretrial catalog and witness list, disclosing this newly-subpoenaed witness.

Thereafter, non-party Banco Ficohsa Honduras moved to quash the subpoena on the ground that there is no records custodian at the International Representative Office in Coral Gables; rather, the records custodian is located in Honduras, where the bank itself, and the bank records, are located.

On the June 7 trial date, the trial court granted Banco Ficohsa Honduras' motion to quash the subpoena, determining the subpoena was "unnecessary" given the supposed "authentication" and referencing the letter from the local office stating that the attached records were "authentic":

> If you have the documents and you have the certification of authenticity, then the gentleman doesn't have to appear in Court, because you have a certificate of authenticity. It's a moot issue.
>
> . . .
>
> The documents are in fact -- that you have a certificate of authenticity from a records custodian, then they're coming in as business records. Okay. Okay, so your Motion is granted, and you may go.

The trial court advised the Former Wife she could renew any objection to the introduction of the bank records when the Former Husband sought their admission at trial. At trial, when the Former Wife renewed her objection, the trial court heard argument from the parties, overruled the objection, and admitted the documents as business records:

6

Let me look at them. It says, "**We hereby present you with copies of Ms. Mishelle's and Ms. Evelyn's accounts with transactional records pertaining to the requested dates in the subpoenas**, as well as a print screen of our database search" – it doesn't say the key language that these records are made and kept in the regular course of their business. I am going to be honest with you, Ms. Baird. The way I read the letter is that these are authentic copies of business records. That's how I read it, because it doesn't have to say business records. It says they are authentic copies of transactional records. A transactional record is a business record of the Bank, so I am going to allow the documents to come in. The documents have been properly translated.

(Emphasis added).

Relevant to the issues presented, the Former Wife testified and denied having any substantial assets in Honduras. However, she acknowledged that Hands in Service—a non-profit organization based in Michigan with which she used to be affiliated—utilized her Honduran bank accounts to receive and distribute funds donated to specific Honduran charities. She maintained that, while the account was in her name, the funds that had been in that account (approximately $100,000) were <u>not</u> her funds. The Former Wife further explained that any withdrawals from the account were made by her sister to distribute to the intended charities in Honduras, as instructed by Wayne Merz, the CEO of Hands in Service.

Wayne Merz also testified, and his testimony was consistent with the Former Wife's testimony: Merz would wire transfer funds to the Former

Wife's Honduran bank account, and those funds would be used to pay for Hands in Service projects. The Former Wife or her sister would then withdraw that money to distribute to local Honduran charities. Merz further testified that the Former Wife and her sister were both volunteers, and neither was paid for their work. Once the Former Wife married in 2012, she no longer deposited or withdrew funds from the Honduran bank account utilized by Hands In Service. Instead, her sister, who had signatory authority on the account, took over this duty following the Former Wife's marriage. Mertz also identified which one of the Honduran bank accounts Hands In Service utilized to send funds from the United States to Honduras.[1]

The Former Wife provided a proffer regarding what Evelyn Perdomo (the Former Wife's sister) would have testified to if present. The proffer was consistent with the testimony of the Former Wife and Merz.

At the conclusion of the trial, the trial court announced its finding that the money in three of the four Honduran bank accounts were marital assets the Former Wife sought to conceal from the Former Husband.

The Former Wife moved to reopen the trial, again challenging the introduction of the bank records due to the failure to provide a records

---

[1] The trial court, in its oral pronouncement and in the order on appeal, found Merz's testimony credible.

custodian to properly authenticate them. She requested that the trial court reopen the trial to hear from an actual records custodian who would explain that "the same bank accounts have different account numbers due to changes in the banking system utilized by Banco Ficohsa in Honduras; and that the same sums were moved from one account to another but ultimately withdrawn by the Former Wife's sister, Evelyn." The Former Husband objected, and the trial court denied the Former Wife's motion.

The trial court entered a supplemental final judgment of dissolution of marriage, noting it admitted the Honduran bank records over the Former Wife's objection. It further found that there were four different bank accounts in the Former Wife's name at Banco Ficohsa Honduras existing on the date the petition for dissolution was filed (January 3, 2018). Of those four accounts, the following contained marital assets "not originating from Hands In Service": "$65,963.99 in account xx86 . . .; $40,978.09 in account [xx91] . . .; and $1,028.32 in xx83." It thus found that a total of $107,970.40 in the wife's Honduran bank accounts were marital assets subject to equitable distribution.

The trial court denied the Former Wife's request for prejudgment interest, finding that "it would be inequitable to charge the Former Husband for delays largely occasioned by the pandemic." The trial court also denied

9

both parties' request for attorney's fees without making any finding on the parties' relative need and ability to pay.

Based on these findings, the trial court ordered the Former Husband to retain the funds in the Capital One account ($103,865) and the Former Wife to retain the funds in the bank accounts at Banco Ficohsa Honduras ($107,970.40).

This appeal followed.

## ANALYSIS AND DISCUSSION

1. **It was error to admit the records of Banco Ficohsa Honduras because they were not properly authenticated.**

"Evidentiary rulings are generally reviewed under an abuse of discretion standard." Bank of New York Mellon v. Garcia, 254 So. 3d 565, 567 (Fla. 3d DCA 2018). However, to the extent that such ruling is based upon construction of a statute or rule, this court applies a de novo standard of review. Id.

The trial court found: "The Court reviewed a letter dated February 14, 2020, signed by the General Manager of the International Representative Office in Coral Gables, and attached to the records and found it to be in substantially similar form to a Records Custodian Affidavit."

The Former Wife contends that, instead of obtaining the bank records from the bank's records custodian in Honduras, the Former Husband

obtained the records (and a letter stating the records were authentic copies) from its International Representative (a non-records custodian) in Coral Gables, Florida.  While the Former Husband did subpoena Banco Ficohsa Honduras,  the Bank moved to quash that subpoena, asserting that the Coral Gables office is not a proper custodian of the Bank's records, and that these records were the only evidence introduced in an effort to establish that marital assets existed in Honduras.

We conclude that the Former Wife's contention has merit.

We begin with an unremarkable proposition:

> Authentication or identification of evidence is required as a condition precedent to its admissibility.  The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

§ 90.901, Fla. Stat. (2021).

The trial court admitted the bank records under the business records exception to the hearsay rule, section 90.803(6)(a), Florida Statutes (2021). Under that rule, a party intending to offer such evidence may do so through witness testimony from a records custodian or through a written certification of authenticity:

> (a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business

11

activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c)[2] and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness.

§ 90.803(6)(a), Fla. Stat. (2021).

In the instant case, the Former Husband sought admission of the foreign bank account records of Banco Ficohsa Honduras through a certification of authenticity. Such certification must satisfy the requirements set forth in section 90.902(11), Florida Statutes (2021), which generally incorporates the evidentiary foundation for admission of business records under section 90.803(6). Section 90.902(11) provides:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required for:

…

(11) An original or a duplicate of evidence that would be admissible under s. 90.803(6), which is maintained in a foreign country or domestic location and is accompanied by a certification or declaration from the custodian of the records or another qualified person certifying or declaring that the record:

---

2 Section 90.803(6)(c) provides in pertinent part:

A party intending to offer evidence under paragraph (a) by means of a certification or declaration shall serve reasonable written notice of that intention upon every other party and shall make the evidence available for inspection sufficiently in advance of its offer in evidence to provide to any other party a fair opportunity to challenge the admissibility of the evidence.

(a) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters;

(b) Was kept in the course of the regularly conducted activity; and

(c) Was made as a regular practice in the course of the regularly conducted activity.

Here, the manager for the International Representative Office in Coral Gables provided the records, together with an introductory letter; it is this letter which the trial court relied upon as the certification of authenticity required under section 90.902(11).  That letter provided, <u>in its entirety</u>:

Reference is made to the Subpoena Duces Tecum Without Disposition dated on January 27th of the present year. In that regard, please observe the following statement:

1. Banco Ficohsa International Representative Office, also known as Banco Ficohsa Corp., *is licensed under the laws of the state of Florida to operate as an international representative office **<u>serving as liaison</u>** between Banco Financiera Comercial Hondurena, S.A. (Banco Ficohsa Honduras)*, a banking Institution organized according to the laws of Honduras, and its existing and prospective customers in the United States. As a representative office, Banco Ficohsa Corp. DOES NOT have permission to receive deposits of deposit-type liabilities in the United States or in any other U.S. territory.

2. Banco Ficohsa Corp. is also NOT ALLOWED to engage in any activities relating to securities trading, foreign exchange, or money transmission services

3. Considering the above, Banco Ficohsa Corp. submitted your request to its Head Office in Honduras and it has been confirmed

13

to us that Ms. Mishelle Addys Perdomo Vindel and Ms. Evelyn Waleska Perdomo Vindel DO HOLD personal [sic] with Banco Ficohsa Honduras, unlike Elusions Corporacion, legal entity who DOES NOT appear in our records.

***We hereby present you with authentic copies*** of both Ms. Mishelle's and Ms. Evelyn's accounts with transactional records pertaining to the requested dates in the subpoena, as well as a print screen of our database search for Elusions Corporacion in which you can observe the message "Query caused no records to be retrieved".

(Emphasis added).

While the letter purported to "authenticate" the records, it also (a) acknowledged that the office is an International Representative Office of Banco Ficohsa Honduras, without permission "to receive deposits or deposit-type liabilities in the United States . . . ." and (b) explained that the Head Office in Honduras confirmed that the wife and sister held personal accounts in the Honduran bank.  Moreover, the letter fails to:

- certify or declare that the records "were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters" (§ 90.902(11)(a));

- certify or declare that the records were "kept in the course of the regularly conducted activity" of the foreign bank (§ 90.902(11)(b)); or

14

- certify or declare that the records were "made as a regular practice in the course of the regularly conducted activity" of the bank (§ 90.902(11)(c)).

It is self-evident that this letter fails to meet the foundational requirements for authentication of these foreign bank records.

And given the similarity in the requirements contained in sections 90.902(11) and 90.803(6) (together with section 90.902's incorporation of the material requirements of 90.803(6)), decisions construing and applying 90.803(6) provide helpful guidance. See, e.g., Washburn v. Washburn, 211 So. 3d 87, 91 (Fla. 4th DCA 2017) (holding bank records were hearsay and trial court erred in admitting them in absence of required certification or declaration under section 90.803(6): "That section requires the certification or declaration to state that the record sought to be admitted was made at or near the time of the occurrence or from information transmitted by a person with knowledge, was kept in the course of regularly conducted activity, and was made as a regular practice in the course of the regularly conducted activity.")

In the instant case, the letter not only fails to provide the requisite certification or declaration, it indicates that the records were made and kept by another office located in another country:

15

> Considering the above, Banco Ficohsa Corp. ***submitted your request*** to its Head Office in Honduras and it has been confirmed to us that Ms. Mishelle Addys Perdomo Vindel and Ms. Evelyn Waleska Perdomo Vindel DO HOLD personal [sic] with Banco Ficohsa Honduras, unlike Elusions Corporacion, legal entities who ***DOES NOT appear in our records***.

(Emphasis added).

Banco Ficohsa Honduras reiterated this point in its motion to quash, where it argued that its records custodian is located in Honduras, and that there is no records custodian located in Coral Gables. In support of its position, Banco Ficohsa Honduras relied on the Florida Supreme Court's decision in Ulloa v. CMI, Inc., 133 So. 3d 914 (Fla. 2013). In Ulloa, the Court considered (in the context of a criminal case) whether a party could compel a nonparty foreign corporation to produce documents by serving the corporation's registered agent in Florida. The Court concluded that "the provisions of chapter 607 governing registered agents cannot be invoked to obtain documents from a nonparty corporation, where the corporation and the requested documents or materials are located out-of-state." Id. at 925. See also Kinsale Ins. Co. v. Murphy, 285 So. 3d 411, 412 (Fla. 1st DCA 2019) ("A Florida subpoena has no force outside the state, absent compliance with another state's requirements for service of process. § 48.011, Fla. Stat. (2018) ("Summons, subpoenas, and other process in civil actions run throughout the state; Quest Diagnostics Inc. v. Swaters, 94 So.

16

3d 635, 640 (Fla. 4th DCA 2012) (holding party seeking to serve subpoena on nonparty in civil case required to comply with requirements for service of process in state where no party was located)." Ulloa further supports the Former Wife's position that the trial court erred in allowing the bank records into evidence.

Because we hold that the trial court erred in admitting the bank records, we also hold that this error requires reversal of the trial court's determination that the accounts in the Former Wife's name at Banco Ficohsa Honduras contained marital assets subject to equitable distribution, as there is no competent substantial evidence to support such a determination.[3]

2. **The trial court erred in declining to grant the Former Wife prejudgment interest in the equitable distribution award on the stated basis.**

Because we are reversing and remanding for further proceedings on the question of equitable distribution of the Former Wife's marital assets, we also address the trial court's order denying (or declining to award)

---

[3] Given our determination that the trial court erroneously admitted the bank records, we do not reach the Former Wife's alternative argument that, even if the records were properly admitted, the trial court erred in concluding the funds in those accounts were marital assets and that the records do not support the trial court's findings as to what amounts in each account constituted marital funds.

17

prejudgment interest to the Former Wife. The following timeline is relevant to this issue:

- In January 2018 the Former Husband filed for divorce.

- In September 2018, the Former Wife received $47,500 in temporary attorney's fees.

- In February 2021, the Former Wife received $208,742.30 in equitable distribution.

- In April 2022, the Former Wife received the balance of $57,922.70 in equitable distribution.

The Former Wife posits that she had no access to a substantial portion of her share of the marital assets for more than three years (January 2018 to February 2021) following the Former Husband's filing of the petition for dissolution in January 2018, and that the trial court should have granted her request for prejudgment interest during this time.

In denying the Former Wife's request for prejudgment interest, the trial court found "it would be inequitable to charge the Former Husband for delays largely occasioned by the pandemic." The Former Wife contends this stated reason for denying prejudgment interest was erroneous, both factually and legally. As to the factual error, the Former Wife argues that at least two of the three years of "delay" (i.e., the period between January 2018 and March

18

of 2020) could not have been occasioned by the pandemic, since the shutdown resulting from the pandemic did not occur until March of 2020.

As to the legal error, the Former Wife contends that the "cause" of the delay is not relevant in determining whether to award prejudgment interest in the context of equitable distribution of marital assets. We note, as a general proposition, that the primary purpose of awarding prejudgment interest is not to punish the Former Husband, but to compensate the Former Wife for the loss of the use of funds during a time period in which she was entitled to those funds. In <u>Catalfumo v. Catalfumo</u>, 704 So. 2d 1095 (Fla. 4th DCA 1997), the Fourth District reversed the trial court's denial of prejudgment interest on an equitable distribution award of over a million dollars. In doing so, our sister court noted:

> The purpose of requiring payment of prejudgment interest is "to insure that equity be done between the parties." <u>Cotton v. Cotton</u>, 439 So. 2d 309, 310 (Fla. 2d DCA 1983), rev. denied, 447 So.2d 886 (Fla.1984).
>
> . . .
>
> We agree with the reasoning expressed in <u>Morris v. Morris</u>, 724 P.2d 527 (Alaska 1986), that awarding prejudgment interest "is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment. A corollary purpose is to prevent the judgment debtor from being unjustly enriched by the use of that money." <u>Id.</u> at 529; <u>see also</u> <u>Argonaut Ins. Co. v. May Plumbing Co.</u>, 474 So. 2d 212, 215 (Fla.1985).

19

> The record supports the trial court's finding that Mr. Catalfumo had the benefit and use of Mrs. Catalfumo's share of the assets for more than seven years. Under the facts of this case and the findings of the trial court, it would be inequitable for Mrs. Catalfumo to be denied prejudgment interest. We therefore hold that the trial court abused its discretion when it failed to award prejudgment interest from the date of filing of the petition for dissolution.

Id. at 1099-1100.

This court, in an appeal from a final judgment of dissolution of marriage involving an equitable distribution award, relied upon this specific reasoning in Catalfulmo. See Schuenzel v. Schuenzel, 320 So. 3d 214, 216 (Fla. 3d DCA 2021) ("The purpose of prejudgment interest is to make the plaintiff whole from the date of the loss, to compensate him for losing the use of his money during that period. Catalfumo, 704 So. 2d at 1100").

In the instant case, because the trial court's stated reason for denying the Former Wife's motion for prejudgment interest (concluding "it would be inequitable to charge the Former Husband for delays largely occasioned by the pandemic") is not supported by the competent substantial evidence and fails to consider the primary purpose of an award of prejudgment interest, we reverse and remand for the court to reconsider the Former Wife's motion, consistent with this opinion, and in light of our reversal of a portion of the equitable distribution award.

In doing so, we caution however, that "[a] party in a divorce proceeding is not 'entitled' to such interest in every case, because the trial court must have broad discretion to determine the most equitable distribution of marital property under the particular circumstances." Mathers v. Brown, 21 So. 3d 834, 839 (Fla. 4th DCA 2009) (finding the trial court did not abuse its discretion in awarding prejudgment interest) (quoting Morris, 724 P.2d at 529). See also 26 Fla. Jur 2d Family Law § 1198 ("A decision to award prejudgment interest in a dissolution action is within the trial court's discretion and will not be disturbed absent an abuse of such discretion.") (citing Mathers, 21 So. 3d 834).

We also acknowledge that the First District recently held that a trial court does not have the authority to award prejudgment interest as part of an equitable distribution of marital assets because section 61.075, Florida Statutes (governing the equitable distribution of marital assets in Florida) "does not authorize prejudgment, or retroactive, interest." Iarussi v. Iarussi, 353 So. 3d 75, 80 (Fla. 1st DCA 2022).[4]

---

[4] Our sister court further observed:

> Though prejudgment interest is not mentioned in the statute, some Florida courts have read it in. The only court to discuss it in depth is the Fourth District, first in Catalfumo v. Catalfumo, 704 So. 2d 1095 (Fla. 4th DCA 1997).

21

Because we are reversing the trial court's order denying the Former Wife's request for prejudgment interest and remanding for further proceedings (which will include the trial court's reconsideration of the issue), we need not formally address the apparent conflict between the decisions of this court and our sister court in <u>Iarussi</u>.  To the extent that our remand for reconsideration is an implicit determination that the trial court has the authority to award prejudgment interest in the first instance, we note conflict with <u>Iarussi</u>.[5]

---

. . .

> The purpose of equitable distribution is to distribute marital assets equitably, and does not deal in prior loss, entitlement, or unjust enrichment. There is no statutory authority to add prejudgment interest to an equitable distribution. The separation of married persons inevitably causes temporary distance between people and their property. But marital property, which is all that we deal with when discussing an equitable distribution, is owned by both parties. <u>Carroll v. Carroll</u>, 471 So. 2d 1358, 1361 (Fla. 3d DCA 1985) ("Assets which are acquired during marriage are to be deemed as jointly owned assets and are to be equitably distributed."); § 61.075(6), Fla. Stat. Because they both jointly owned all of the marital assets subject to distribution, it necessarily follows that neither could have suffered a deprivation of property warranting prejudgment interest prior to entry of final judgment.

<u>Iarussi v. Iarussi</u>, 353 So. 3d 75, 80 (Fla. 1st DCA 2022)

[5] We further observe that the equitable distribution statute expressly authorizes the trial court "to do equity" in determining the equitable distribution of marital assets. § 61.075, Fla. Stat. ("In a proceeding for

## 3. The trial court erred in denying the Former Wife's motion for attorney's fees and costs without making the requisite findings.

Throughout the proceedings, the Former Wife consistently sought attorney's fees based on the Former Husband's greater ability to pay. Section 61.16(1), Florida Statutes (2022), requires that the trial court take into consideration the parties' ability to pay when awarding attorney's fees and costs.[6] Troike v. Troike, 271 So. 3d 1069, 1073 (Fla. 3d DCA 2019).

---

dissolution of marriage, . . . the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including . . . [a]ny other factors necessary to do equity and justice between the parties"); see, e.g., Carollo v. Carollo, 920 So. 2d 16, 18 (Fla. 3d DCA 2004) ("The trial court possesses broad discretionary authority to do equity between the parties when making financial awards in dissolution proceedings. Canakaris v. Canakaris, 382 So. 2d 1197 (Fla. 1980)"). This authority would appear to include—at the very least—the authority under appropriate circumstances to award prejudgment interest where necessary to do equity. And the reason offered by Iarussi for not permitting prejudgment interest—"Because they both jointly owned all of the marital assets subject to distribution, it necessarily follows that neither could have suffered a deprivation of property warranting prejudgment interest prior to entry of final judgment," see Iarussi, 353 So. 3d at 80—would appear to overlook the fact that, even if jointly owned, it may well be that one spouse had taken steps to secure sole access to and use of those marital assets, to the exclusion of the other spouse. The fact that the asset may be jointly owned does not mean there could not be—as a practical matter—a deprivation of access to and use of a marital asset, thus warranting consideration of an award of prejudgment interest.

[6] Section 61.16(1), Florida Statutes (2021) provides in relevant part:

The court may from time to time, after considering the financial

23

However, the trial court denied each parties' request for attorney's fees without making any finding regarding their respective need and ability to pay. The final judgment merely provides:

> Both parties' requests for an award of attorney's fees from the other are DENIED. Each party shall bear its own attorney's fees and costs.

The trial court's summary denial of the Former Wife's motion for attorney's fees, without making any findings regarding the parties' need and ability to pay, is reversible error. Gudur v. Gudur, 277 So. 3d 687, 693 (Fla. 2d DCA 2019) ("As to attorney's fees, the trial court ordered that '[e]ach party shall pay his/her own attorney's fees.' The trial court cannot deny a request for attorney's fees under section 61.16 without making findings as to one party's ability to pay an award of fees and the other party's need for the payment of fees."); Rawson v. Rawson, 264 So. 3d 325, 332 (Fla. 1st DCA 2019) ("Without making any findings as to the former wife's need for fees and the former husband's ability to pay them, the trial court ruled only that both parties were responsible for their own attorney's fees. In simply denying

---

resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals.

fees without further explanation, the trial court erred."); <u>Gaetani-Slade v. Slade</u>, 852 So. 2d 343, 347 (Fla. 1st DCA 2003) ("[A] trial court cannot decide the issue of attorney's fees without findings as to one spouse's ability to pay fees and the other spouse's need to have fees paid.") (quotation omitted); <u>Fulmer v. Fulmer</u>, 961 So. 2d 1081, 1082 (Fla. 1st DCA 2007) (reversing the trial court's order denying request for attorney's fees and remanding case for trial court to make findings in support of its decision because "the absence of findings of fact regarding the parties' needs and ability to pay renders a trial court's decision regarding attorneys' fees impossible to review").[7] We

---

[7] We note that the Florida Supreme Court recently amended Florida Rule of Civil Procedure 1.530(a) and corresponding Florida Family Law Rule 12.530(a), adding a preservation requirement for a claim that the trial court failed to include requisite findings in a final judgment. The amendatory language of each rule now provides:

> To preserve for appeal a challenge to the sufficiency of a trial court's findings in the final judgment, a party must raise that issue in a motion for rehearing under this rule.

Fla. R. Civ. P. 1.530(a); Fla. Fam. L. R. P. 12.530(a). However, the effective date of this amendment was August 25, 2022. <u>See</u> <u>In re Amendments to Florida Rule of Civil Procedure 1.530 and Florida Family Law Rule of Procedure 12.530</u>, 346 So. 3d 1161 (Fla. 2022), and therefore did not apply to the instant case, since the final judgment was filed April 4, 2022, and a timely motion for rehearing would have been filed well before the effective date of this amendment. <u>See</u> Fla. Fam. L. R. P. 12.530(b) (providing that a motion for rehearing "must be served not later than 15 days after . . . the date of filing of the judgment in a non-jury action.")

therefore reverse and remand for reconsideration of the Former Wife's motion for attorney's fees and costs.

**CONCLUSION**

Because the bank records of Banco Ficohsa Honduras were unauthenticated and improperly introduced into evidence, we reverse that portion of the final judgment regarding equitable distribution and remand for a redetermination of equitable distribution without consideration of, or reliance upon, those bank records.[8] We also reverse, for the reasons stated, the trial court's denial of the Former Wife's request for prejudgment interest, and the denial of the Former Wife's motion for attorney's fees and costs, and remand for further proceedings consistent with this opinion.

---

[8] See Certain Underwriters at Lloyd's London v. Candelaria, 339 So. 3d 463, 471 n.9 (Fla. 3d DCA 2022) ("[W]here the reversal is the result not of trial court error, but a party's failure to meet its evidentiary burden, a remand to allow for a "second bite of the apple" is generally not permitted; Levy v. Ben Shmuel, 255 So. 3d 493, 497 n. 4 (Fla. 3d DCA 2018) (en banc) (noting that, as a general rule, a party's failure to meet its evidentiary burden will not be afforded a 'second bite of the apple' on remand following appeal, and recognizing an exception where the party's failure to meet its burden was the result of judicial error)").